[Civ. No. 217.   Third Appellate District.—August 30, 1906.]

## JOHN BASHORE, Respondent, v. H. M. MOONEY, Personally and as Administrator of Estate of J. J. MOONEY, Deceased, et al., Appellants.

WATER DITCH—QUIETING TITLE—PLEADING—OWNERSHIP IN FEE—FINDINGS—EASEMENT SUBJECT TO DEFENDANT'S RIGHTS—In an action to quiet title to a water ditch, an averment in the complaint that plaintiff owns the ditch in fee does not render it insufficient, because the findings show a lesser right to an easement of the ditch over defendant's lands, with the right to repair the same, subject to their rights to maintain certain drops, head-gates and side ditches therefrom for irrigation of their lands. The greater title alleged includes the lesser found; and the judgment may afford less relief than that demanded in the complaint.

ID.—ADVERSE CONSTRUCTION OF DITCH—PRESCRIPTIVE RIGHT.—A prescriptive right to maintain a ditch as an easement need not have its origin in a grant from the owners of the land or by agreement with them, but it may have its inception in the act of constructing the ditch adversely, and it is sufficient that it ripened into a title by adverse use for the statutory period.

ID.—ENTIRE POSSESSION NOT ESSENTIAL—ACQUISITION OF PRESCRIPTIVE RIGHTS BY DEFENDANTS—RESIDUE IN PLAINTIFF.—The rule requiring entire possession by one claiming land under a prescriptive right is inapplicable to rights of way for roads and ditches; and after the plaintiff's predecessors had acquired title to the ditch, it was competent for the defendants to acquire against them and plaintiff a prescriptive right to use the ditch to convey a limited quantity of water to their lands, while plaintiff, as grantee of his predecessors, retained the right to use the ditch for his own purposes to the extent of its remaining capacity.

ID.—SUFFICIENCY OF FINDING FOR PLAINTIFF—PRESCRIPTIVE RIGHT TO DITCH.—A finding that "ever since the construction of said ditch" by plaintiff's predecessors in 1879, "it has been used by said persons, who constructed the same, as aforesaid, and by their grantees openly, continuously, adversely to the title of all others and under a claim of title exclusive of any other right, as their own and notoriously and uninterruptedly for a period of more than five years prior to the commencement of this action, and they have paid all the taxes levied or assessed against the ditch and the right of way therefor," covers every element of a perfect title by prescription.

ID.—CERTAINTY IN DESCRIPTION—COMMON NAME OF DITCH—LOCATION WELL KNOWN—MAP IN BILL OF EXCEPTIONS.—Where the location of the water ditch in controversy was well known, and it is definitely located on a map made part of the bill of exceptions by the appellants, there is no uncertainty in the description of the ditch in the judgment by the name by which it has been commonly known and called, since it appears that there would be no difficulty in finding it from the description given.

ID.—SUPPORT OF FINDING AS TO PRESCRIPTIVE RIGHTS—CONFLICTING EVIDENCE.—Where there was no conflicting evidence as to the prescriptive rights acquired by plaintiff's predecessors, and there was sufficient evidence to support the finding that such rights were acquired by them, the finding will not be disturbed upon appeal.

ID.—SOURCE OF WATERS IN DITCH AND OWNERSHIP OF LAND IMMATERIAL. It is immaterial to plaintiff's prescriptive rights that the ditch in question is not used to divert water from a natural watercourse, but from the canal of an irrigation company, from which it is a private extension constructed by plaintiff's predecessors, or that the lands over which it runs belong to the defendants, there being sufficient evidence to sustain the finding that it was not established under a parol license from their predecessor.

ID.—EVIDENCE—CONVERSATIONS WITH DEFENDANT'S PREDECESSOR—OWNERSHIP OF DITCH.—Evidence was admissible for plaintiff to to show conversations by a witness with the predecessor in interest of the defendants appealing, to show that the witness, five years after the ditch was constructed, was inquiring of him as to the ownership of the ditch right, and that such predecessor made no claim to it.

ID.—EFFORTS OF PLAINTIFF'S PREDECESSOR TO SELL DITCH—ACQUIESCENCE OF DEFENDANTS' PREDECESSOR.—The testimony of one of plaintiff's predecessors, for whom the extension ditch was named when constructed, as to his efforts to sell it to the irrigation company, of which appellants' predecessor was president, was admissible as tending to show a claim of ownership by the witness, and the acquiescence of appellants' predecessor in the claim by his conduct at that time.

ID.—CHAIN OF PLAINTIFF'S TITLE—ORDER OF PROOF.—Documentary evidence to show plaintiff's chain of title to the ditch from the original builders thereof was admissible, although there was yet no evidence to show the nature of the title thereto, by adverse user or otherwise. The order of proof is not ground of error, and the documentary proofs must be considered in connection with the other evidence tending to support the findings of prescriptive ownership of the ditch.

ID.—HARMLESS RULINGS AS TO EVIDENCE.—The admission of evidence affecting other parties and not the appellants, and of irrelevant

evidence not injuriously affecting appellants, and error in excluding evidence cured by appellants' subsequently drawing out the same facts, are harmless rulings which could not prejudice the appellants.

APPEAL from a judgment of the Superior Court of Tulare County, and from an order denying a new trial. H. Z. Austin, Judge presiding.

The facts are stated in the opinion of the court.

Hannah & Miller, and Alfred Daggett, for Appellants.

Charles G. Lamberson, for Respondent.

CHIPMAN, P. J.—Action to quiet title to a certain water ditch known as the Zumwalt Extension of the Tulare Irrigation Company's Ditch, and the right of way therefor. Two of the three original plaintiffs conveyed to the third, after the complaint was filed, and the latter filed a supplemental and amended complaint as sole plaintiff in the case. There were numerous defendants, as to some of whom the court found that they had no interest in the ditch; as to others the court found that they had a certain interest therein; as to the defendant Tulare Irrigation Company it was found that it was the owner of said ditch to a certain point, connecting with the portion of said ditch found to belong to plaintiff, with "the right at all times to turn into said portion of said ditch owned by plaintiff as aforesaid all the surplus water of said defendant which it shall desire to turn therein." None of these defendants appeal. As to defendants, appellants, the court found that they are the owners of the right to maintain certain drops and headgates in the ditch and certain side ditches leading therefrom on certain land by them owned, situated in section 7, township 19 south, range 25 east, through which plaintiff's ditch runs, in part, and to take therefrom water sufficient to irrigate one hundred acres of land on said section, but that they have no other right to or interest in plaintiff's said ditch. Plaintiff was found to be the owner of the ditch and right of way in question, except as above indicated and judgment passed for plaintiff accordingly. The defendants last above referred to appeal from that part of

the judgment which adjudges plaintiff to be the owner of so much of said ditch and right of way as passes over said last-named defendants' lands in said section 7 with the right to enter thereon at proper times to repair and operate the same; also from that part of the judgment which limits said defendants' rights as above stated. After judgment was entered and notice of appeal served, defendant and appellant J. J. Mooney died, and defendant H. M. Mooney was substituted as administrator. In their brief appellants do not question that part of the decree or the findings which relate to the Tulare Irrigation Company and that interest will not be noticed further; indeed by their answer they seem to concede the rights of the irrigation company. The appealing defendants in their answer denied plaintiff's ownership of the portion of said ditch which passes over defendants' said land and alleged that the Tulare Irrigation Company is the owner of the portion of said ditch from the east line of said section seven for a distance of one-quarter of a mile, and that the remaining portion of said ditch situated on said section 7 is owned by defendants. In the answer of some of the many remaining defendants it is alleged that the entire ditch from its point of commencement to its end was constructed for the use and benefit of the owners of the land lying along the same, "and as a neighborhood ditch to supply water for irrigation to and upon said lands from the system of the Tulare Irrigation Company and from other irrigation systems . . . and has been since its construction appurtenant to the said lands of defendants." Other defendants claimed part ownership in the ditch. The Tulare Irrigation Company was made a defendant upon a demand of several of the defendants.

Appellants challenge the sufficiency of the evidence to support the findings upon which the interests decreed to plaintiff and appellants are based. It is also urged that the findings do not nor does the complaint support the judgment.

The judgment and its support: The contention is—

1. That the complaint is insufficient to support the judgment, because based upon the allegation that the plaintiff is the owner in fee of the ditch in question, while the findings show simply a tenancy in common with appellants; 2. That the findings show that the ditch is constructed upon land owned by appellants and plaintiff never acquired any title to

the ditch from the owner by conveyance or agreement; 3. That the findings fail to show that plaintiff acquired title by prescription as required by the statute of limitations; 4. That the findings are so uncertain that it cannot be ascertained therefrom to what extent plaintiff is the owner of a right of way for the ditch referred to in the findings and judgment.

1. The point that the findings are insufficient as to the extent of plaintiff's title because of the allegation in the complaint of ownership in fee. is not well taken.   That plaintiff claimed title in fee did not preclude the court from finding a right or ownership in the nature of an easement; the greater title alleged included the lesser.   The judgment may not exceed the demand of the complaint, but there is no rule that would prevent the court from granting less relief than that demanded.   Plaintiff's right had its inception in the act of constructing the ditch, and if it ripened into title by adverse use for the statutory period this was sufficient.

2. It was not necessary that the prescriptive right should have its origin in a grant from the owners of the land or by agreement with them.   (Code Civ. Proc., secs. 324, 325.) The rule requiring entire possession by one claiming land under a prescriptive right is inapplicable to rights of way for roads and ditches.   Otherwise it would be practically impossible to acquire similar easements by prescription.   It was said in *Humphreys* v. *Blasingame,* 104 Cal. 40, 44, [37 Pac. 804, 805], ''Plaintiff's use of the way under claim of right was necessarily hostile, but it need not amount to an ouster or exclusion of the defendant from a right to use the way. The use of the way, if without right, is a trespass, which would have given the defendant a right of action; and that is all that is necessary to set the statute running, so far as a right of action is concerned.''   Of course there must be occupancy of so much of the land as is sought to be taken for the right of way.

3. The prescriptive right which the court found to have ripened in plaintiff and his predecessors in interest was initiated as early as 1879 and is the right referred to in the findings, and, as presently shown, continued until the filing of the complaint, except as to defendants' interest.   Defendants'. prescriptive right was found by the court to have been initiated about the year 1890, long after the five years'

adverse use by plaintiff's predecessors had elapsed. That defendants could acquire a prescriptive right to use the ditch to convey a limited quantity of water to their lands while plaintiff or his predecessors retained the right also to use the ditch for his own purposes to the extent of its remaining capacity, we have no doubt. We so held substantially in the recent case of *Smith* v. *Hampshire,* No. 181, decided June 23, 1906, ante, p. 8, [87 Pac. 224]. (See, also, *Abbott* v. *Pond,* 142 Cal. 393, 396, [76 Pac. 60].) ''Every interest created in favor of several persons in their own right is an interest in common,'' unless acquired in a way not involved here. (Civ. Code, sec. 686.)

4. It is also contended that the findings are insufficient to show a prescriptive right. The particular finding attacked is the following: ''That ever since the construction of said ditch as aforesaid (which the court found was in 1879), it has been used by the said persons who constructed the same as aforesaid, and by their grantees, openly, continuously, adversely to the titles of all others, and under a claim of title exclusive of any other right, as their own, and notoriously and uninterruptedly for a period of more than five years prior to the commencement of this action, and they have paid all the taxes levied or assessed against said ditch and the right of way therefor.''

This finding in our opinion covers every element mentioned in *Unger* v. *Mooney,* 63 Cal. 595, [49 Am. Rep. 100], as requisite to a perfect title by prescription. This case has been frequently cited approvingly as authority on this point. The title there involved was to a city lot, and the court said: ''There are five elements required to make out an adverse possession sufficient to constitute a defense under the statute of limitations: 1. The possession must be by actual occupation, open and notorious, not clandestine. 2. It must be hostile to the plaintiff's title. 3. It must be held under a claim of title, exclusive of any other right, as one's own; 4. It must be continuous and uninterrupted for a period of five years prior to the commencement of the action, not, however, necessarily next before the commencement of the action; 5. Since the passage of the proviso to section 325 of the Code of Civil Procedure in 1878, payment of taxes.''

Appellants cite *Churchill* v. *Louie,* 135 Cal. 608, [67 Pac. 1052], and claim that it is there held as necessary that it

must appear that the use was exclusive. The point there decided was that the pleading failed to show "that the use was exclusive or adverse to *plaintiff* . . . or that it was adverse to *anyone.*" Section 324 of the Code of Civil Procedure is as follows: "Where it appears that there has been an actual, continued occupation of land, *under a claim of title, exclusive of any other right,* but not founded upon a written instrument, judgment or decree, the land so actually occupied, and no other, is deemed to have been held adversely." Section 325 of the same code declares that adverse possession is not established, "unless it shall be shown that the land has been occupied and claimed for the period of five years continuously, and the party or persons . . . have paid all the taxes . . . . which have been levied and assessed upon such land." The courts have added some explanatory words in formulating the elements which are deemed necessary, under the statute, to constitute prescriptive title, but they do not and could not materially change its requirements. When these requirements of occupancy are fully met a title is conferred, "denominated a title by prescription, which is sufficient against all." (Civ. Code, sec. 1007.) We are unable to discover any element lacking in the finding referred to which is necessary to meet the statutory requirements or the decisions of our supreme court.

5. There is no radical or other uncertainty in the description of the ditch such as is contended by appellants. It was commonly known as the Zumwalt Extension Ditch, sometimes called the Mooney Ditch, and its location was well known. There would be no difficulty in finding it from the description given and a map was made part of the bill of exceptions, by defendants, which locates the ditch definitely.

Appeal from the order: In discussing this branch of the case appellants appear to attach importance to the fact that the ditch in question is not used to divert water from a natural watercourse but from the canal of the irrigation company; and to the further fact that the land over which the ditch runs belongs to defendants. It is immaterial whence plaintiff gets the water for his ditch, whether from another ditch or from some natural stream. The ownership of the land by defendants is also, as we have already shown, equally immaterial. It is also argued, and may not be disputed, that a ditch or right of way is an interest in real

property and can be granted only by an instrument in writing (Code Civ. Proc., sec. 1971; *Smith* v. *O'Hara,* 43 Cal. 371; *Hayes* v. *Fine,* 91 Cal. 396, [27 Pac. 772]), and if the evidence, in the opinion of the trial court, had established  simply a parol license, as claimed by appellants, founded in personal confidence or favor, no interest in the land would have been created that was not subject to revocation.  *Jensen* v. *Hunter* (Cal.), [41 Pac. 14], is cited by appellants to the point.

The evidence shows that the ditch in question from its point of connection with the Tulare Irrigation Company's ditch to its terminus is four or five miles long, constituting a continuous ditch and from it several defendants at different points have obtained water to irrigate their land for various crops ever since its completion.  It was constructed in the spring of 1879, as found by the court, and as the evidence establishes, by D. K. Zumwalt, J. B. Zumwalt, Samuel Fowler and A. J. Fowler; it was an extension and known as the Zumwalt Extension of the  Tulare  Irrigation  Company's ditch and was designed to irrigate the lands situated west of defendants' lands.  There was some controversy with this irrigation company as to the starting point, but by stipulation it was agreed that it began fifteen and fifty-four hundredths chains west of the east line of section 7, above described, and ran thence southwesterly across said section, of which the south half and the southwest quarter of the northwest quarter was then owned by Michael Mooney. He died in November, 1881, and defendant John J. Mooney became the executor of his will and administered his estate and managed the property until February, 1890, when it was distributed, including the said lands in section 7, to defendants (appellants), the heirs at law of Michael Mooney.  The map shows that the ditch passes over the lands of defendants J. J. Mooney and H. M. Mooney.

The contested and vital issue, reduced to its simplest form, is whether the right of way and ownership of the ditch claimed by plaintiff ripened into a prescriptive title.  Some testimony given by witness Samuel Fowler was offered by these defendants tending to establish the fact that the ditch was built by consent of Michael Mooney, and that he agreed to pay Fowler $100 if he, Fowler, would bring it through Mooney's land, and hence that Mooney became its owner.  It would require strong evidence to show that a ditch of the

length and cost of this one, made to serve so many interests, would be left to the absolute control of Mooney by the sole ownership and control of the section connecting the ditch with the water system of the Tulare Irrigation Company. Similar evidence would be called for to convince the ordinary mind that such a ditch would be constructed under a mere license subject to revocation at any moment.

As appellants place much reliance on Fowler's testimony, coming from one of the ditch builders, it may as well be here noticed as elsewhere. He testified that he met Michael Mooney at the time the ditch was projected. He was asked what was said about the ditch between him and Mooney, and answered: "I told him I wanted to build a ditch down through his place. I asked him how much he would be willing to assist me in building the ditch, how much he would pay me. He said he would give me $100 if I would bring water through there. Q. Did he say he would give you $100 if you would bring water through there, or if you would bring the ditch across his land? A. Well, it was $100 for helping construct the ditch. He was to give $100 if I was to build the ditch through there. That is about all I can recollect of it." On cross-examination he testified: "I think I had gone up there and located where I wanted the ditch before I saw Mooney. I and D. K. Zumwalt, J. B. Zumwalt and my son Jack had agreed that we should build the ditch. I certainly would have built the ditch whether Mooney had offered to pay me anything or not. It was my intention to go and build the ditch, provided I was not interfered with by anyone." He testified that there was nothing said between him and Mooney to the effect that when built the ditch was to belong to Mooney. It appeared that witness did not call upon Mooney for the $100 nor did he present a claim against his estate therefor. But some time after it was too late to present claims he was given some hay by J. J. Mooney, value not stated, on account of this claim, but whether it was "in satisfaction of the debt his father owed" the witness, the latter could not recollect.

Witness D. K. Zumwalt testified: "J. B. Zumwalt, Sam Fowler, Jack Fowler and myself constructed that ditch. I made no arrangements for any leave or license to make that ditch through the Mooney land." In reply to the use made of the ditch he testified: "Running water through it for irri-

gation purposes, stock and irrigation purposes. The men who helped make the ditch, I mean J. B. Zumwalt, Samuel Fowler, and Jack Fowler, who assisted me in building the ditch, used it in conjunction with me, and afterward our neighbors, we permitted them to use water from the ditch. Jack Fowler's proper name was A. J. Fowler. Samuel Fowler continued to use the ditch somewhat, but not regularly until the time he sold to me. J. B. Zumwalt continued to use it up to the time of his death, which occurred about December, 1891, and I continued to use it more or less each year up to the present time. From the time I acquired all the title to that ditch, I used it for the purpose of conveying water up to the time I sold it; and have been using water through the same ditch since, but not exercising control. I continued to run water through there, and whenever repairs or anything was necessary, it was done through my men, or others along the ditch using water. I never at any time asked the permission of the Mooneys or any of them, to run water through that ditch, and I never at any time asked permission of the Mooneys, or any of them, to go upon their land for the purpose of repairing the ditch. Whatever I did in connection with running that water through the ditch was done without any reference to the rights or claims of the Mooneys, or any of them, or in relation to anything I did to the ditch. The Mooneys did not, nor did any of them, ever at any time interfere in any way with my operation of that ditch."

He testified to having been along the ditch on the Mooney land and clearing the ditch and that he had sent his men there to make repairs on the ditch and that to his knowledge the Mooneys made no objection. He testified also to having proposed on several occasions to sell the ditch to the Tulare Irrigation Company, while J. J. Mooney was president of the company, and in 1891, just before the death of J. B. Zumwalt, who joined with him for that purpose; that J. J. Mooney was present at the meeting of the board of directors when the matter was talked over and that he made no objection on the ground that witness was not the owner of the ditch. Witness stated, however, that some one objected to buying the ditch "because of the adverse claim of Stufflebeam and the Bashores"; that the directors, including Mooney, went with witness along the entire line of the ditch

to examine it and witness went for the purpose of showing the property he proposed to sell, and it included the ditch over the Mooney land. He testified that most of the work done in constructing the ditch was by hired men; that sometime in ''the latter part of the '80's,'' about 1886, J. J. Mooney asked permission to use the ditch to irrigate some land and to put in a headgate to turn out the water and witness stated to him that there was no objection; witness did not recollect that permission was afterward asked, but he testified: ''The Mooneys, H. M. and J. J., have used that ditch every year and up to now, every year to irrigate their lands through which it flows, and they have not come to me to get my permission to do that.''

There was evidence that owners of land along the ditch below the Mooney land, including, among others, the ditch builders, were users of the water coming through the ditch from the time of its completion and that they exercised the right of repairing and controlling the ditch from its head down. There was more or less controversy among these users with D. K. Zumwalt as to the right to the ditch and in some instances litigation ensued. The evidence tended to show that these contested rights did not involve the Mooneys and that the latter made no claim to the ditch itself beyond the right to use a certain amount of the water running through it, of which the extreme claim proven was a right to use the water necessary to irrigate one hundred acres of their land, as found by the court; and there was evidence that the Mooneys made no claim to the ditch itself until about the time this action was brought. The evidence was abundant to establish the prescriptive right as found by the court to be in appellants. Touching plaintiff's right to the ditch there was more or less conflict in the evidence, but there was sufficient to support the findings. It is not the office of the reviewing tribunal to attempt a reconciliation of the conflicting evidence or to say what witnesses are to be believed and what ones to be distrusted or to determine where the preponderance of evidence lies. This is peculiarly the function of the trial judge.

Appellants assign numerous errors in the admission or exclusion of evidence. Some of these will be noticed: all of them do not call for comment. Plaintiff was interrogated as to certain conversations with J. J. Mooney concerning this

ditch. That occurring in 1880 need not be noticed, as the testimony was withdrawn. The witness testified as to conversations with Mooney in 1884, and some other times, the object of which seems to have been not to show a transfer by Mooney or create an estoppel, as suggested by appellants, but to show that the witness was inquiring as to the ownership of the ditch right and that Mooney made no claim to it. As a circumstance bearing upon the issues the evidence was admissible.

It would require a recital of much evidence to show its bearing as to the witness having turned water out of ditch on the Higbee land above the Mooney land. Conceding its irrelevancy it was harmless.

The testimony of witness Zumwalt as to his efforts to sell the ditch to the Tulare Irrigation Company while Mooney was president was admissible as tending to show Zumwalt's claim of ownership and Mooney's acquiescence in the claim by his conduct at that time.

The deeds placed in evidence by plaintiff showing that the title claimed by the original builders of the ditch had been conveyed by them to D. K. Zumwalt, and through him finally to plaintiff, were admissible. The objection urged is that there was as yet no evidence introduced when these documents were offered tending to show that Zumwalt ever had any title to the ditch by adverse use or otherwise. The order of proof is not ground for error. We must consider these conveyances and other documentary proofs in connection with all the other evidence, of which there was some supporting the findings as to the Zumwalt title by prescription. The case of *Hays* v. *Fine,* 91 Cal. 391-398, [27 Pac. 772], is not in point. There the claim made was under an instrument in writing and the effort to establish the claim by proof of labor done would be inadmissible because in the nature of parol proof where something higher is required. Here the claim is not based at all upon a written instrument, but upon adverse use, and that having been established, the subsequent conveyances were admissible to show ownership in plaintiff.

Certain leases made by Zumwalt in 1885 and 1886, by which he agreed that one Adlesbach might use the ditch were admitted. This was in plaintiff's rebuttal and was for the purpose of meeting certain evidence which concerned defendants, Peter and Marie Adelsbach. There was some evidence

tending to show adverse use by the Adelsbachs, and counsel stated that the purpose was to show that they used the ditch under lease from Zumwalt, whose interest plaintiff had acquired. We cannot see that the evidence injuriously affected appellants under the offer.

Defendants' error marked 13 was cured by their subsequently drawing out the facts sought.

Witness Fay was a defendant and when called as a witness for defendants testified that he had gone frequently into the Mooney field to work on the ditch. He was asked by defendants if he did not before doing this work get permission from John or Hugh Mooney. The question was objected to and objection sustained as irrelevant, incompetent and self-serving. He subsequently testified that J. J. Mooney directed him about the work. This answer appears to us to have met the point defendants were making. If Fay was working under direction of Mooney the latter's permission would seem to follow.

Certain objections were made to evidence which appears to have concerned defendants other than appellants and was admitted not so much as bearing upon appellants' interests as upon the interests of other defendants or as tending to contradict certain of their witnesses. We cannot see that appellants were injuriously affected by this testimony.

Discovering no prejudicial error in the record the judgment and order are affirmed.

Buckles, J., and McLaughlin, J., concurred.