ESTES *v.* LUCKY.

Opinion delivered March 4, 1918.

1. FRAUD—FRAUDULENT JUDGMENT.—A judgment will be set aside after the term, when procured by fraud, when the fraud was practiced upon the court in the procurement of the judgment.

2. INFANTS—SUBJECT TO JURISDICTION OF COURT, WHEN.—When minors are made parties defendant, properly served and a guardian *ad litem* has been appointed to defend for them, in a suit touching subject matter over which the court has jurisdiction, they are in court for all purposes, as effectually as if they were adults, and subject to the same rules of procedure as adults.

3. JUDGMENTS—FRAUD.—The mere fact that a larger judgment was rendered than the facts justified, does not show that a judgment

was procured by fraud. The remedy from such an erroneous judgment is by way of appeal.

4. INFANTS—LANDS—FORECLOSURES OF LIENS.—Kirby's Digest, § 6248, has no application to decrees of foreclosure under liens placed upon the lands of an infant by his ancestor.

5. GUARDIAN AND WARD—PLEA THAT DEED WAS INTENDED AS MORTGAGE.—A plea that a deed was intended as a mortgage, is defensive matter, and may be pleaded by a guardian *ad litem* in an action against á minor.

6. EQUITY JURISDICTION—ACTION AGAINST MINOR—COMPLETE RELIEF.— In an action in equity against a minor, when the court found a deed in controversy to be a mortgage, it is the court's duty, upon request, to foreclose the same and grant complete relief. When equity takes jurisdiction for one purpose, it takes it for all purposes.

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; reversed.

*Carmichael, Brooks & Rector,* for appellants.

1. There was no ground for setting aside the decree of April 23, 1910. Before a collateral attack can be sustained it must be shown that the court was without jurisdiction, or that there was fraud or mistake. 91 Ark. 525; 101 *Id.* 390. The fraud must be in the procurement and not in the case itself. 94 Ark. 588.

All parties were before the court, the minors by guardian *ad litem.* A full and fair hearing was had and decree rendered. None of the claims were barred by limitation or nonclaim. 123 Ark. 161. No fraud accident or mistake was shown. 14 Ark. 360; 56 Ark. Law Rep. 304; 57 *Id.* 599; Kirby's Digest, § 4431; 91 Ark. 314; 104 *Id.* 562; 98 *Id.* 15. The whole matter is *res adjudicata.* A bill of review would not avail.

2. The infants were bound and are not entitled to have the decree set aside. 70 Ark. 415; 79 *Id.* 199; 103 *Id.* 69; 22 Cyc. 699; 3 Johns. Chy. 367; 49 Ark. 398; 105 *Id.* 9.

3. The only remedy for infants was by appeal. 3 Ark. 532; 5 *Id.* 424; 81 *Id.* 464; 97 *Id.* 314; 21 *Id.* 117; 22 *Id.* 118.

4. The infants sought and obtained equitable relief and are bound. 123 Ark. 161.

*E. L. Carter* and *Marvin Harris,* for appellees.

1. The decree was procured by fraud. Kirby's Digest, § 4431. It was fraud practiced upon the court. 75 Ark. 415; 7 Ky. 183; 25 *Id.* 1; 5 Sneed (Tenn.) 665; 37 Okla. 228.

2. The decree was not a foreclosure of a mortgage executed by the ancestor of the minors, and they are not bound, but have the right to set it aside within one year after arriving of age. 69 Ark. 1; 79 *Id.* 199; 90 *Id.* 44; 70 *Id.* 415; 81 *Id.* 440, 464.

3. The decree was void because it did not follow the pleadings. It was not within the issue. The power of guardians *ad litem* are purely statutory, and infants are not bound or prejudiced by admissions. Kirby's Digest, § 6023; 14 R. C. L. 291-2; 166 Ind. 471; 77 N. E. 942. The foreclosure was void for want of jurisdiction. 81 Ark. 440, 462; 55 *Id.* 562; 76 *Id.* 152; 55 *Id.* 205; 13 *Id.* 183; 12 *Id.* 183; 13 *Id.* 491; 56 *Id.* 397; 62 *Id.* 439; 51 S. W. 73; 87 *Id.* 206; 89 *Id.* 160; 23 Cyc. 684, 797, 816-17-18, and note 60; 124 Ark. 206.

HUMPHREYS, J. Alfred Lucky died intestate February 28, 1914, leaving Sarah Lucky, his widow, Jack Lucky, Nathan Lucky, George Lucky, Alfred C. Lucky and Emanuel Lucky, his children and only heirs at law. At the time of his death he owned the northwest quarter, northwest quarter and north half, southwest quarter, northwest quarter, section 22, township 2 south, range 10 west, in Pulaski County, Arkansas, which constituted his homestead. The family were residing on the homestead at the time, and still reside on about two acres where the house is situated. On April 23, 1903, prior to his death, he and Sarah Lucky executed a mortgage on the homestead to H. L. Fletcher for $375, bearing interest at the rate of 10 per cent. per annum from date until paid; and pledged his team to Smith & Estes for $190. T. C. Wimberly, a relative, was appointed and qualified as administrator of the estate of Alfred Lucky, deceased. He procured an order from the probate court to borrow $500 on long time from the American Freehold Land & Mortgage

Company of London, Limited, with which to pay the Fletcher mortgage on the real estate and the Smith & Estes mortgage on the team. On the 17th day of February, 1905, Sarah Lucky, widow, and T. C. Wimberly, administrator, joined in a deed of trust to Benjamin Graham for the American Freehold Land & Mortgage Company of London, Limited, to secure twelve notes evidencing a loan of $600. Out of the money thus borrowed, the administrator paid the Fletcher mortgage on February 23, 1905, and $100 on the Smith & Estes mortgage on February 24, 1905, and, about the same time, paid J. M. Rose $34.50 interest on the Fletcher mortgage, and $2.50 for recording same. Smith & Estes advanced supplies to Alfred Lucky prior to his death and to his family after his death, and Dr. J. H. Estes continued to assist them in this way until they owed him a balance of over $1,100, including the Smith & Estes account. Default was made in the payment of the indebtedness to the American Freehold Land & Mortgage Company of London, Limited, and it foreclosed the mortgage under the power contained therein and purchased the lands at the sale. Thereafter it sold the lands to J. H. Estes, who then contracted them to J. H. Laster. Dr. J. H. Estes also bought an outstanding tax title from G. A. Merrick and obtained a quitclaim deed from him to the southwest quarter of the northwest quarter of said section, township and range for $20.37. Laster's attorney advised that it was necessary to quiet the title to the lands. J. H. Estes then brought suit in the Pulaski Chancery Court to quiet the title and obtained service in the manner provided by law upon the widow and children of Alfred Lucky, deceased. J. A. Comer, a practicing attorney at the Pulaski bar, was appointed guardian *ad litem* to represent the minor defendants and filed answer for them, denying *seriatim* the material allegations of the complaint, and offered to discharge any liens that might exist against the lands. By employment, he also filed an answer for Sarah Lucky. The cause was heard by the court upon the complaint and exhibits, the answer of Sarah Lucky, the answer of the guardian *ad*

*litem* for the minor defendants, the original obligations
and instruments sued on, oral and other evidence, tax
deeds, tax receipts and abstracts of title. The court
found that the deeds, together with the other instruments
in writing, constituted mortgages and that J. H. Estes was
entitled to recover $1,772.95 out of the land and from
Sarah Lucky. In accordance with these findings, on
April 23, 1910, the court rendered a personal judgment
against Sarah Lucky, declared the amount a lien on the
lands, and decreed a foreclosure and ordered a sale of
the lands if the amount was not paid within twenty days.
The amount was not paid and the lands were sold under
the order and purchased by J. H. Estes, who deeded them
to J. H. Laster.

This suit was instituted on the 2d day of December,
1915, in the Pulaski Chancery Court to set aside the de-
cree rendered by said court on April 23, 1910, on the
ground that the judgment was procured by fraud. The
appellants denied all the material allegations in the com-
plaint charging fraud. The court heard the case upon
the pleadings, documentary and oral evidence, from which
it found that the lands in controversy constituted the
homestead of appellees and that they had been in actual
possession of a portion of them since the death of Alfred
Lucky, but that Sarah Lucky had lost her homestead right
therein by abandonment, and that the decree sought to be
set aside was erroneous and void and canceled it. The
court also heard proof as to the rents and profits received
by appellants from said lands and the value of improve-
ments made and the taxes paid by them and struck a bal-
ance in favor of appellants for $147.22, and declared a lien
in favor of J. H. Laster on the lands for said sum, by rea-
son of subrogation to the rights in the deed of trust ex-
ecuted by Alfred Lucky, deceased, and Sarah Lucky, to H.
L. Fletcher. From that decree an appeal has been prose-
cuted to this court.

(1-2) The first issue presented by the pleadings and
and evidence in the case is whether the judgment rendered
by the chancery court on April 23, 1910, was procured by

fraud. Under the fourth subdivision of section 4431 of Kirby's Digest, judgments procured by fraud may be set aside after the expiration of the term at which rendered. ''But the fraud which entitles a party to impeach a judgment must be a fraud extrinsic of the matter tried in the cause. It must not consist of any false or fraudulent act or testimony the truth of which was or might have been in issue in the proceeding before the court which resulted in the judgment that is thus assailed. It must be a fraud practiced upon the court in the procurement of the judgment.'' *Bank of Pine Bluff* v. *Levi,* 90 Ark. 166; *Pattison* v. *Smith,* 94 Ark. 588. In the case at bar there is an entire absence of any word, act or conduct on the part of any one connected with the original case to indicate that the judgment was induced by fraud. The parties now seeking to set the judgment aside were parties to that suit. It is true all except Sarah Lucky were minors, but they were properly served and a regular practicing attorney of the Pulaski County bar, in good standing, was appointed guardian *ad litem* to defend for them. When minors are made parties defendant, properly served and a guardian *ad litem* has been appointed to defend for them, in a suit touching subject matter over which the court has jurisdiction, they are in court for all purposes, as effectually as if they were adults, and subject to the same rules of procedure as adults. *Boyd* v. *Roane,* 49 Ark. 397.

(3) The guardian *ad litem* filed an answer, denying all allegations in the complaint. No undue haste was indulged in procedure. Ample opportunity was given to prepare and try the case. So far as we are able to discover, the entire case, in all of its aspects, was presented to the court. At least, there is nothing to show that any misrepresentations were made to the court or any facts withheld from it. The judgment sought to be set aside recites that the cause was heard upon ''the original obligations and instruments sued on, and upon testimony taken *ore tenus* and other evidence, tax receipts, tax deeds and abstracts of title.'' J. H. Estes testified that he gave

the same testimony then as now.　J. A. Comer, guardian *ad litem,* testified, in substance, that he made a *bona fide* defense for his clients; that in his judgment none of the claims were barred at the time he filed his answer; that he insisted that the American Freehold Land & Mortgage Company's debt could not be subrogated to the Fletcher debt; that he contended that the deed from the American Freehold Land & Mortgage Company to J. H. Estes was a mortgage and not an absolute deed; that the debts had been paid, etc.; that the court held the deed was a mortgage, upon the testimony of Sarah Lucky to the effect that Dr. J. H. Estes told her she might pay off the indebtedness and get her land back; that he made an effort to reduce the claim but failed, and that he then made an effort to get some one to take up the indebtedness but finally failed.　The fact alone that a larger judgment was rendered than was justifiable falls far short of proof that the judgment was procured by fraud upon the court.　Nor can we agree with learned counsel for appellees that the failure of the guardian *ad litem* to plead the statute of nonclaims or the three or five years statute of limitations establishes fraud.　The guardian *ad litem* testified that upon examination he became convinced that the claims were not barred.　It appears from the evidence that the administrator borrowed money and paid off the mortgage indebtedness on the land within one year after the death of Alfred Lucky, so that the statute of nonclaims was not available to the minors as a defense.　The Fletcher note and mortgage were executed April 23, 1903, due three years after date, and were not barred at the time the administrator paid it by the five-year statute of limitations. The other indebtedness was in the nature of a running account and it can not be said that it was barred by the three-year statute of limitations at the time the guardian *ad litem* filed his answer.

The most that can be said concerning the entry of the judgment on April 23, 1910, is that it was entered for an erroneous amount and that a larger amount was adjudged a lien upon the homestead than the original mortgage cov-

ered. These were issues either tried or triable in that suit, and, since it appeared from the face of the decree that the defendants were minors, the only remedy to them, if error was committed, was by appeal.

(4-5) It is said that the judgment was fraudulent because the order made by the probate court for the administrator to borrow the money with which to pay the lien indebtedness against the land was void. It is not shown that this fact was suppressed or withheld from the court rendering the original judgment. It was a matter that was or might have been presented in the original suit and is now excluded from consideration under the doctrine of *res adjudicata.* It is said, however, that under the eighth subdivision of section 4431 of Kirby's Digest, the minors may correct any errors in the judgment. It is provided by that subdivision that the court in which a final judgment or order has been made may vacate or modify same after the expiration of the term, ''for errors in a judgment, shown by an infant in twelve months after arriving at full age, as prescribed in section 6248.'' This subdivision must be read in connection with section 6248 in order to ascertain the class of cases to which it is applicable. Section 6248 is applicable under the construction heretofore given it by this court ''where the effect of the decree is to divest the infant of an interest in lands, or where a conveyance is required of an infant in land.'' It has no application to decrees of foreclosure under liens placed upon the lands by the infant's ancestor. *Woodall* v. *Moore,* 55 Ark. 22; *Blanton* v. *Rose,* 70 Ark. 415; *Martin* v. *Gwynn,* 90 Ark. 44; *Paragould Trust Co.* v. *Perrin,* 103 Ark. 67.

(6) It is insisted that the judgment rendered in the original suit was not within the issues as presented by the pleadings and evidence. The original suit was for the purpose of quieting the title to said real estate in J. H. Estes, based upon a deed absolute upon its face. As one of the defenses to that suit, the guardian *ad litem* for the minor defendants pleaded that the deed, though absolute in form, was in fact a mortgage. The court so found

and decreed a foreclosure against the lands for $1,772.95. It is insisted that the guardian *ad litem* had no power to plead affirmative matter and to ask affirmative relief. It is true that a guardian *ad litem,* appointed to defend for a minor, can not introduce affirmative matter and ask for affirmative relief. In other words, it is beyond his power to file a cross-bill and bind his ward. In order to bind the ward, he must confine himself to matters purely defensive. We think it strictly defensive matter to plead that a deed absolute on its face is in fact a mortgage, and that the guardian *ad litem* in the instant case was within his powers when he made that defense. When the court found that the deed absolute on its face was in fact a mortgage, it was the court's duty, upon the request of the petitioner in the original suit, to foreclose the mortgage upon the theory that when a court of equity takes jurisdiction of a cause of action for one purpose it takes it for all purposes. The judgment rendered in the original suit was within the issues presented by the pleadings and evidence.

Under this view of the case, it is unnecessary to discuss the question of rents, profits, taxes and improvements.

For the error indicated, the decree is reversed and the cause remanded for the entry of a decree in favor of appellants.