WINFIELD M. PIERCE, APPELLEE, V. LOGAN FONTENELLE ET AL., APPELLEES, IMPLEADED WITH NETTIE GARCIA ET AL., APPELLANTS, GERALD B. EAGLETON, INTERVENER-APPELLEE.

55 N. W. 2d 658

Filed November 28, 1952.  No. 33182.

*Ralph M. Anderson* and *Moodie & Burke,* for appellants.

*Alfred D. Raun, Paul W. Eagleton,* and *Van Pelt, Marti & O'Gara,* for intervener-appellee.

*William M. Graham* and *Ellenberger & Pipher,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

Plaintiff commenced this action to partition described farm lands, alleging that he was and had been the owner in fee simple of an undivided one-ninth interest therein since July 14, 1939. Defendants included the sole heirs at law of Eugene Fontenelle who died January 12, 1944, the executors of his estate, and The Federal Land Bank of Omaha, which at all times here involved concededly had a first mortgage on the premises.

Thereafter Gerald B. Eagleton, hereinafter called intervener, filed a motion in such action seeking permission to intervene upon the ground that he was the owner of the land by virtue of a warranty deed. Such motion was subsequently sustained by consent of all parties.

Thus a petition in intervention was filed denying that plaintiff had any right or interest in the land, and alleging that intervener was the owner of all the land in fee simple, subject to the mortgage aforesaid, by virtue of a warranty deed executed and delivered to him on January 20, 1943, by Eugene Fontenelle, hereinafter called grantor, which deed was duly recorded. He alleged that defendants had no rights or interest except by inheritance from grantor, all of which had been superseded by said deed which passed title to intervener prior to death of grantor. The prayer of such petition was for dismissal of plaintiff's petition and that title to the land should be quieted in intervener.

Thereafter defendants answered such petition in intervention, denying generally and alleging that the purported deed described in intervener's petition was null

and void because obtained by intervener as a result of fraud practiced upon grantor without any consideration paid therefor; that it was never intended by either intervener or grantor that said deed should convey title to the land described therein; and that it conveyed no title or interest to intervener, who had no right, title, or interest in the land. In that connection it alleged that prior to January 20, 1943, date of the alleged execution and delivery of said warranty deed, grantor had conveyed all his interest in the land to two named defendants by quit claim deed of which intervener had actual notice and knowledge, thus grantor then had no interest in the land which could have been conveyed to intervener. It then alleged that said deed to intervener was not recorded until December 27, 1948, during which period he never went into possession of or exercised any right of ownership or dominion over the land, therefore any right of action by virtue of the deed was barred by estoppel and laches. However, the assignments of error and argument here do not present such last-named issues, and they will not be further discussed. The prayer of defendants' answer was for dismissal of intervener's petition and that title to the land should be quieted in them.

Thereafter counsel for intervener filed an amended petition in intervention without intervener's knowledge or consent. Such petition was never signed or verified by intervener or his attorneys then or subsequently, although it was agreed by counsel for the parties that his signature might be affixed thereto prior to trial. Such amended petition alleged that consideration for the deed aforesaid, executed and delivered to intervener by grantor, was an unpaid store account in the sum of $1,581, three notes aggregating $400, and payment of $200 cash at the time said deed was executed and delivered on January 20, 1943. It also alleged that at said time it was orally agreed between intervener and grantor that in event such total of $2,181 with interest

at five percent from such date was repaid by grantor to intervener, he would return said deed to grantor or reconvey the land to him; therefore said instrument, although in form a warranty deed, was in legal effect a mortgage. It alleged that no part of such debt or interest thereon had been paid, and no proceedings at law had been had to recover the same, and that there was then due thereon the sum of $2,181 with interest from January 20, 1943. It prayed that defendants should be foreclosed of all equity of redemption or other interest in the land or that the land be sold according to law and intervener be paid the amount adjudged due him out of the proceeds thereof after payment of liens according to their priority, and for equitable relief.

On the day of the trial, defendants filed answer to such amended petition denying generally, and substantially renewing and repeating the allegations of their answer to intervener's original petition. It further alleged, however, that "said intervener had received full and complete payment of any indebtedness which the said Eugene Fontenelle may have owed to intervener in his lifetime, and that there is nothing due to intervener which might form the basis of a lien on the real estate involved herein." The prayer was for dismissal of the amended petition in intervention, and that the title to the land should be quieted in defendants. At the beginning of the trial, counsel for defendants informed the court that some of the defendants had purchased plaintiff's one-ninth interest and taken an assignment of his cause of action together with a deed to his interest in the land involved, therefore plaintiff's case would not be for trial at that time. In that connection, plaintiff, whose interest was apparently prior to that of intervener, was not a representative of deceased. Therefore, the case actually tried was the controversy between intervener and defendants. In such situation intervener was required to proceed as if he were plaintiff.

Thereat evidence was adduced by intervener and he

rested, whereupon defendants offered no evidence and rested. During the trial at conclusion of intervener's direct evidence his counsel requested leave of court to withdraw his amended petition in intervention and rely upon his original petition, the allegations of which conformed to the evidence then adduced. The trial court answered that he would reserve ruling thereon until conclusion of the case, whereupon defendants moved that intervener be then required to elect upon which theory he was trying the case, that is, whether the deed was absolute or in legal effect a mortgage. Thereupon and in response thereto intervener elected to try the case upon the theory that the deed was absolute as alleged in his original petition, and the court permitted him to do so. The trial thereafter proceeded upon that theory.

On October 23, 1951, decree was rendered finding and adjudging that Eugene Fontenelle, deceased, did during his lifetime on January 20, 1943, execute and deliver to intervener his warranty deed to the land, the consideration for which was $2,181; and that an agreement existed between the grantor and intervener that grantor had the right during his lifetime to redeem the property described in said deed by payment of $2,181 with interest at six percent from the date of the deed. Accordingly, defendants were given 90 days from entry of the decree to redeem upon payment of grantor's debt to intervener as aforesaid, and upon failure thereof defendants' equity of redemption should be foreclosed and intervener's deed become absolute, subject to the mortgage of the Federal Land Bank and plaintiff's one-ninth interest. Intervener was permitted to recover his costs in the amount of $5.25.

Defendants' motion for new trial was overruled and they appealed, assigning substantially that the trial court erred: (1) In permitting intervener during the trial to change his theory and elect to proceed upon the theory presented in his original petition; (2) in decreeing that the warranty deed involved was in legal effect a mort-

gage and decreeing foreclosure when the trial was had upon intervener's theory that it was an absolute conveyance; (3) in permitting intervener to testify concerning transactions and conversations between himself and grantor in violation of section 25-1202, R. R. S. 1943; and (4) in decreeing foreclosure and adjudging that grantor was indebted to intervener in the amount of $2,181 plus interest at six percent from January 20, 1943. We conclude that assignments Nos. 1, 2, and 3 aforesaid have no merit, but that assignment No. 4 should be sustained in part.

With regard to assignment No. 4 we conclude that the trial court was correct when it decreed strict foreclosure and found that grantor was indebted to intervener in the amount of $2,181 with interest from January 20, 1943. However, the record discloses conclusively that the rate of interest thereon should have been five percent and not six percent as allowed by the judgment. Therefore, the judgment is modified to require that the amount of $2,181 shall bear interest at five percent from January 20, 1943, instead of six percent, until the rendition of judgment in district court, after which the judgment shall bear interest at six percent. Otherwise the judgment is affirmed.

We turn back then to the first assignment which is disposed of by the well-established rule that a party may not predicate error upon or be heard to complain about a ruling which he has procured or has been instrumental in bringing about. See, Pahl v. Sprague, 152 Neb. 681, 42 N. W. 2d 367; Chambers v. Chambers, 155 Neb. 160, 51 N. W. 2d 310; Egan v. Bunner, 155 Neb. 611, 52 N. W. 2d 820, and cases cited therein.

In that connection it will be noted that intervener's election and permission to proceed upon the theory alleged in his original petition was invited and brought about by defendants' motion that intervener should be required by the court to elect in order for defendants to appropriately defend. True, thereafter defendants both

in the trial court and here were dissatisfied with the particular election which intervener made and objected thereto, but under the circumstances they cannot complain or predicate error thereon.

The second assignment was predicated upon the premise that the judgment was contrary to the theory upon which the case was tried; in other words, that the findings and judgment were foreign to the issues made by the pleadings. The action was in effect simply a suit to quiet title. In the light of appropriate allegations in their pleadings both parties prayed for such relief. It was also an in rem action. Johnson v. Samuelson, 82 Neb. 201, 117 N. W. 470, 130 Am. S. R. 666; Prudential Insurance Co. v. Zimmerer, 66 F. Supp. 492.

In Hanson v. Hanson, 78 Neb. 584, 111 N. W. 368, this court said: "The original petition filed by plaintiff in the 'title suit' was for the purpose of quieting all conflicting claims of title in the lands between plaintiff and defendant. It was instituted under the code, which, for the purpose of preventing a multiplicity of suits, has enlarged and expanded the general equity jurisdiction of the district courts, so as to permit an action of this nature at the suit of a plaintiff, whether in possession of the disputed lands or not. The plain intent of the statute is to determine in one cause of action all conflicting claims of all parties to the suit to all the lands in dispute between them. And, when the district court takes jurisdiction of such a cause of action, it takes it with power to do whatever is necessary to a full exercise of its jurisdiction, * * *." See, also, Tarnow v. Carmichael, 82 Neb. 1, 116 N. W. 1031; Foree v. Stubbs, 41 Neb. 271, 59 N. W. 798; Dolen v. Black, 48 Neb. 688, 67 N. W. 760. In such last-cited case this court held: "In an action quia timet in this state the question of title between the parties may be fully litigated and determined and a decree rendered assigning the title to the real estate or any part of it to the party entitled thereto."

In Maxwell v. Hamel, 138 Neb. 49, 292 N. W. 38, this

court said: "Statutes authorizing parties to bring action to quiet title are enabling acts (4 Pomeroy, Equity Jurisprudence, 3310, sec. 1397; 51 C. J. 136); where authorizing suit by one out of possession they are intended to enlarge and extend the equitable remedy (51 C. J. 139); and they are not penal, restrictive nor destructive (Armor v. Frey, 253 Mo. 447, 474, 161 S. W. 829)." With regard to the Missouri case therein cited, this court said: "The court * * * pointed out that the proceeding to quiet title is an action wherein the court is asked 'to ascertain and determine, define and adjudge the title, estate and interest of the parties. It does not ask for the recovery of real estate or the possession thereof. It does not ask affirmative relief. It seeks simply an ascertainment of the status quo of the title * * * to the property.' "

In 74 C. J. S., Quieting Title, § 96, p. 146, it is said: "The relief to plaintiff authorized in a suit to quiet title is equitable, and ordinarily consists in a judgment quieting title in him to, or removing a cloud on, the property in dispute, or quieting title to as much thereof as plaintiff shows himself entitled; and the fact that plaintiff alleges ownership in fee does not preclude the court from awarding him an easement. The court may also award such incidental relief as may be proper or necessary to make the main relief complete, such as foreclosure of a deed which has been declared to be a mortgage, or may, in a proper case, grant certain relief to plaintiff on finding the title to be in defendant." See, also, 51 C. J., Quieting Title, § 258, p. 271. In other words, the greater title alleged by intervener in his original petition included a lesser interest, if any, and there is no rule that prevents the court from granting lesser relief than that demanded if the pleadings and competent evidence justify such relief. See, also, Estes v. Lucky, 133 Ark. 97, 201 S. W. 815; Bashore v. Mooney, 4 Cal. App. 276, 87 P. 553.

In Northwestern State Bank v. Hanks, 122 Neb. 262,

240 N. W. 281, plaintiff brought an action to quiet title, alleging that it was the owner in fee simple, yet in the light of competent evidence adduced the trial court decreed that plaintiff's deed, absolute upon its face, was intended as security for an indebtedness of defendant to plaintiff and ordered strict foreclosure. We affirmed the judgment, modifying it only with regard to time allowed for redemption by defendant. In doing so, the opinion said: "In a case where the instrument appears on its face to be an absolute conveyance, or warranty deed, and where the title has passed to the grantee, as this court has held it does, even although the parties intended it as security for a debt, we think under the holdings of this court the grantor has conveyed to the grantee all the interest that he has in the premises, and retains only, by operation of equity, the right to pay the indebtedness to the grantee and receive a reconveyance of the title. * * * The grantor's interest, under such circumstances, is a mere right to tender the amount of money the grantee has paid for the grantor, at the contract rate of interest, and receive a reconveyance of his title. * * * In the event the grantor under the circumstances involved in this case desires to protect himself, he is required to do two things: Pay the debt, and obtain a reconveyance of his title, which, if refused, he could enforce in a court of equity. Applying the doctrines already announced by this court and treating the title as already vested in the grantee, it seems to us that the trial court could have logically rendered no other decree than one in the nature of strict foreclosure." We conclude that the second assignment has no merit.

The third assignment in effect depends upon whether or not the judgment was supported by sufficient competent evidence. We conclude that it was.

In that connection three well-established principles of law are involved and controlling. First, it is elementary that in a case tried to the court, either in law or in equity, the presumption obtains that the trial court

in arriving at decision considered only such evidence as was competent and relevant, and this court will not reverse a case so tried because other evidence was admitted, if there is sufficient competent and relevant evidence in the record to sustain the judgment. Western Smelting & Refining Co. v. First Nat. Bank, 150 Neb. 477, 35 N. W. 2d 116.

Second, this court held in Sampson v. Sissel, 151 Neb. 521, 38 N. W. 2d 341: "By statute it is required that consideration shall be set forth in a deed of conveyance of real estate but when title is attacked on the ground of want of consideration no burden devolves upon the grantee to assume the burden of proving consideration.

"When an attack is made on a deed on the ground of lack of consideration the general rule is that the statement of consideration is prima facie evidence which may be rebutted.

"As a general rule a delivered deed passes title even if there is no consideration.

"The possession of a deed or other instrument of conveyance by a grantee raises a presumption that the instrument was properly delivered and the burden of proof is upon him who disputes it to overcome the presumption."

In Kellner v. Whaley, 148 Neb. 259, 27 N. W. 2d 183, this court held: "Such a presumption exists in favor of a grantee who is unable to explain how he came into possession of the deed because disqualified from testifying on account of the death of the grantor.

"The fact that the grantee kept the deed without recording for a number of years, allowed the grantor to remain in possession, and made no claim to the property until after the grantor's death, does not necessarily overcome the presumption of delivery, when the deed, fully executed, is in his possession."

With regard to the third principle, this court held in In re Estate of House, 145 Neb. 866, 18 N. W. 2d 500, 159 A. L. R. 401: "When objection to the admission of

evidence as to transactions or conversations with deceased has been properly made by the representative of a deceased person and erroneously overruled, the party making such objection does not waive his rights under the statute by cross-examining the witness on the same matters or offering direct evidence thereon to meet that erroneously admitted.

"On the other hand, if either on cross-examination or by direct examination the representative goes beyond the scope of the inquiry to which his objection was properly made and as to which it should have been sustained, and introduces evidence of other matters in regard to the original transaction or conversation which is not admissible under the provisions of the statute, then the representative thereby waives the benefit of the statute and any erroneous rulings of the court."

In the light of such rules we have examined the record. From 1927 until early 1950 intervener and his father as partners operated a store known as Eagleton's Store at Decatur, Nebraska. He had known grantor all of his lifetime. Grantor was a customer of the store from 1927 until his death on January 12, 1944. The instrument involved was in form a warranty deed, absolute upon its face, signed by grantor, witnessed by two witnesses, duly acknowledged by a notary public as required by law, and in intervener's possession. The consideration recited was one dollar and intervener was the grantee therein. In a manner almost identical with that approved in In re Estate of House, *supra,* intervener testified that he knew the signature of grantor, and that the signature upon the deed was grantor's signature. He personally knew the notary public as such who took the acknowledgement, and likewise identified his signature. Likewise intervener identified the signatures of the two witnesses whose names appeared thereon, and without any objection testified that he saw all of them, that is the witnesses and notary, sign the same on January 20, 1943, the date of the deed which had been

in his possession since that time, and that he had recorded the same on December 27, 1948. One of such witnesses and the notary subsequently verified intervener's testimony and testified substantially that it was witnessed, acknowledged, and signed by grantor in the presence of intervener and each of them. The instrument was offered and received in evidence over defendants' objections.

When intervener attempted to establish the consideration actually given for the warranty deed, the trial court sustained defendants' objection that it was a transaction or conversation with deceased within the prohibition of section 25-1202, R. R. S. 1943. When doing so the court said in effect that under the evidence adduced and in the light of the pleadings upon which the case was tried, it was then incumbent upon defendants to go forward with their proof and show that the instrument was procured by fraud and without consideration as alleged in their answer. We said as much in both Sampson v. Sissel, *supra,* and Kellner v. Whaley, *supra.*

The intervener was then taken over for cross-examination by counsel for defendants whereat intervener in response to related questions disavowed authenticity of the amended petition in intervention, never signed or verified by him or his attorneys, and reaffirmed his contention that the instrument was in fact a warranty deed and not a mortgage. Thereupon counsel for intervener asked leave to withdraw such amended petition to conform with the evidence which at that point sustained the allegations of his original petition, whereupon defendants moved that intervener be required to elect. Intervener then elected to proceed upon his original petition. At that point, in the light of Sampson v. Sissel, *supra,* Kellner v. Whaley, *supra,* and section 76-235, R. R. S. 1943, there was ample competent evidence that the instrument, in form a warranty deed and admissible in evidence, was executed and delivered to grantee for valuable consideration.

To meet such contention defendants, having admitted in their answer the execution and delivery of the instrument, abandoned their allegations of fraud or want of consideration therefor or that said defendants had superior title and, by cross-examination of intervener, attempted to and did establish that the warranty deed so executed and delivered was in fact given as security for a debt owing by grantor to intervener, therefore in legal effect a mortgage. They attempted to do so without prejudice to their right to rely upon and avoid a waiver of the provisions of section 25-1202, R. R. S. 1943, so far as transactions and conversations between intervener and grantor pertained to a theory that the warranty deed "was intended as a mortgage," with relation to which no evidence had theretofore been erroneously admitted. We conclude, however, that on cross-examination of intervener, defendants, in order to protect their interests, went beyond the scope of the inquiry to which objection was properly made and was or should have been sustained, and thus introduced other matters in regard to the original transaction not admissible under the statute. Thus they thereby waived the benefit of the statute and any related erroneous rulings of the court. As stated in In re Estate of House, *supra:* "In other words, when the representative thus voluntarily opens the door for the purpose of obtaining what he affirmatively desires, he thereby waives the benefit of the statute and gives the interested party the right to further testify in his own behalf and fully explain such transaction or conversation." Such statement is controlling here.

In that connection defendants, upon cross-examination of intervener, asked the following questions to which the following answers were given: "Q- It was your understanding at the time that you took Exhibit 2, and your agreement with Eugene Fontenelle, was it not, that if he would repay you the money which you claim he owed you that you would give him back the deed, is that right?  * * * A- Yes.  Q- That he owed you?  A- That

was intended, but I had an ordinary discussion with Mr. Fontenelle that if he paid me back for his account, and my notes and my $200.00, why, yes, I would give him back that deed. Q- So that you did not intend that deed to convey absolute title, you intended it as a mortgage, didn't you? A- No, I did not. Q- You did not? A- No. The mortgage on the land wasn't worth what he owed on it. Q- As security for what he owed you? A- Yes, in an indirect way I would say. Q- Your agreement with him was that you would convey it back if he paid you? A- If he paid me." Thereafter, upon re-direct examination and in reply to questions to which defendants' objections were properly overruled, it was amply established by competent evidence undenied that the debt owing by grantor to intervener on January 20, 1943, as consideration for the warranty deed, was $2,181, with interest at five percent from that date. Such sum was composed of an unpaid store account of $1,581, three described promissory notes aggregating $400, and $200 paid to grantee in cash when the deed was delivered. The ledger sheets and notes had been placed in an envelope by intervener and surrendered to grantor when the deed was executed, and could not be produced by intervener. Defendants did not produce them or deny intervener's testimony that unless destroyed defendants had them in their possession.

Upon re-cross examination, intervener testified that grantor had an account with the store many years and there was a time after 1927 when he was not indebted to the store. Intervener was not sure when, but he thought it was about 1935 when grantor did not owe anything to the store, after which the store account, $1,581, accumulated, and he thought that grantor always owed the store something after that. For three years, dates not shown, intervener rented 80 acres of land from grantor, and during such time as a rule intervener paid grantor the rent therefor and grantor would pay intervener on the store account when he got the money.

Defendants produced a paid check signed by grantor, dated December 6, 1941, for $54.92, payable to "Gerald B. Eagleton" personally, upon which appeared the notation "Acct in Full." Intervener admitted that he wrote the check himself, except the identified signature of grantor thereon. The check bore the endorsement "Eagleton's Dept. Store," but was not made payable to it. Intervener admitted that such check "could have been" a payment on the store account but no other evidence appears in the record identifying the account which it did pay in full. It will be observed that December 6, 1941, was more than two years before January 20, 1943, when the deed was executed. Such check, assuming for purpose of argument only that it was payment of the store account in full on December 6, 1941, would not establish that the store account was paid in full on January 20, 1943, or that there was not $1,581 owing on that date. Intervener testified that grantor, during the period in which he was a customer, spent thousands of dollars in their store. At most such check could only reflect upon the credibility of intervener's testimony with regard to a time after 1927 when grantor was not indebted to the store.

For the reasons heretofore stated, we conclude that the judgment of the trial court should be and hereby is affirmed, except as modified, allowing intervener to recover five percent interest upon $2,181 from January 20, 1943, to October 23, 1951, the date of the judgment in district court, instead of six percent as allowed by the trial court. Defendants are given six months from the date of the mandate of this court to redeem by making payment of such indebtedness, whereupon intervener shall convey all of his right, title, and interest in the land to defendants. Costs are taxed to defendant appellants.

AFFIRMED AS MODIFIED.