WILL OF SKRINSRUD: SKRINSRUD, Appellant, vs. SCHWENN and others, Respondents.

*May 4—October 6, 1914.*

*Wills: Undue influence: Evidence.*

1. A will should not be set aside as having been made under undue influence unless it be shown by clear and satisfactory evidence that the testator was subject to such influence, that the opportunity to exercise it existed, that there was a disposition to exercise it, and that the result appears to be the effect of such influence.

2. A will giving one half of testator's estate, valued at about $5,000, to his widow, the other half to his son, and making no provision for his three married daughters except that the son was to pay $100 to one of them, is sustained in this case, there being no clear and satisfactory evidence of a disposition on the part of the son to exercise undue influence or that the will was the effect of such influence.

APPEAL from a judgment of the circuit court for Dane county: E. RAY STEVENS, Circuit Judge. *Reversed.*

Ole O. Skrinsrud died January 31, 1913, leaving a paper purporting to be his last will and testament, which was admitted to probate in the county court on April 10, 1913. The will provided that one half of the estate should go to the widow of the deceased and the other half to his son, *Ole Skrinsrud,* with a provision that the son pay to *Susan Schwenn,* a daughter of the testator, $100. The respondents, who are daughters of the deceased, objected to the ad-

mission of the will to probate on the ground that the testator was not competent to make a will at the time in question; that the will was not executed according to law; that the testator was unduly influenced by his son; that the daughters of the testator were left out of the will by mistake and not by design; that the testator was unable to read English and did not know the contents of the paper, and that it was not read over to him and translated from English to Norwegian. From an order of the county court establishing the instrument in question as the last will and testament of Ole O. Skrinsrud, deceased, the contestants appealed to the circuit court. The questions of fact were submitted to the jury on a special verdict, and by their answers thereto the jury found that the testator was mentally incompetent to execute a will; that he was induced by undue influence on the part of his son, *Ole Skrinsrud,* to execute the instrument; and that the failure of the testator to provide for his daughters was because of mistake or accident. The circuit court adopted the findings of the jury on the questions of testamentary capacity and undue influence. Judgment was entered reversing and setting aside the order of the county court, and from the judgment of the circuit court proponent appeals.

For the appellant there was a brief by *Edward J. Reynolds* and *Henry T. Sheldon,* and oral argument by *Mr. Reynolds.*

*F. K. Shuttleworth,* for the respondents.

The following opinion was filed May 21, 1914:

BARNES, J. We are unable to find any testimony in the record which supports the finding of mental incompetency. Some expressions of opinion were given, but no fact at all persuasive was testified to which would indicate that the mind of the testator was not in a sufficiently sound condition to enable him to make a will. The evidence tending to show testamentary capacity was quite strong and convincing.

The case is somewhat closer on the question of undue in-

fluence. The will was made a week before the testator died. He was seventy-three years of age. He had been ill for a long time from what the doctors diagnosed as cirrhosis or sclerosis of the liver and had become greatly emaciated. It is a fair assumption from the evidence that the testator's mind was considerably weakened by disease, so that his power to resist improper influences was not as strong as it would have been had he been well. His son was alone with him about the time the will was made and had ample opportunity to exercise undue influence if he so desired. The son did not notify his mother or sisters of his father's intention to make a will, and aside from the provision for the mother he got practically all of the property.

The net value of the estate was about $5,000. One half of it was given absolutely to the widow. With the exception of $100 given to one of them, no provision was made for the three daughters. They were all married, but the evidence fails to disclose their circumstances. The testimony showed that there had been something of a quarrel between *Ole* and his mother a short time before the will was made and that it was because of this quarrel the mother came to Madison to stay with one of her daughters for a short time. The mother testified that *Ole* had threatened to send her to the insane asylum, and one of the daughters testified to substantially the same effect. The mother testified that the reason *Ole* was mad at her was because "he wanted to have everything alone and I wanted the girls to have something too. He wanted to have the farm and I wanted something and I wanted the girls to have something." This is the only testimony which directly tends to show a disposition on the part of *Ole* to unduly influence his father in making the will.

One of the daughters had resided in Madison for twenty years or more. Another had been married for twelve years and resided within a few miles of her father. It does not appear just how long the third one had been away from home.

*Ole* had also been away from home probably for the greater part of the time for fourteen years or more. It does not appear definitely how much of the time he spent at home and how much away from home, or to what extent he rendered assistance to his father on the farm. The evidence tended to show that the father was on good terms with all of the children. The circumstances might have been such that the disposition made of the property by the testator was not an unreasonable one. The widow had been well provided for considering the amount of the estate. The sum left was not large. The daughters may be comfortably well off. *Ole* may have assisted the father in accumulating the property to a greater extent than did the daughters. These circumstances all might very properly have been shown, but on the record as we find it, it is difficult to say that the distribution was such an unnatural one as to arouse suspicion that the testator had been unduly influenced. One witness testified that he believed the testator told him at one time that he wished *Ole* would stay home, and that if he would come home and help support him he could have the farm. That was two or three years before the testator's death. The witness Tollef Lee testified to a statement made by testator about three weeks before the will was made which indicated that he was thinking of making at least a larger provision for *Ole* than for the others, but said that if he did "it will be kicked from the other party." The testator and *Ole* lived together in Lincoln county for two years. During that time the mother and one of the daughters were in the old country and the other two daughters lived near Springdale. The evidence on the whole tends to indicate that the testator was more partial to *Ole* than to his other children.

A case of undue influence is made out where it is shown (1) that the testator was subject to such influence; (2) that the opportunity to exercise it existed; (3) that there was a disposition to exercise it; and (4) that the result appears to

be the effect of such influence. As the law now is, these facts must be shown by clear and satisfactory evidence. *Ball v. Boston,* 153 Wis. 27, 141 N. W. 8; *Duncan v. Metcalf,* 154 Wis. 39, 44, 141 N. W. 1002; *Boardman v. Lorentzen,* 155 Wis. 566, 145 N. W. 750. Undue influence has not been established in this case by the required degree of proof. Opportunity was clearly shown, and the evidence is quite clear that the mental and physical condition of the testator was such that his power of resistance was not very great. On the other two propositions involved, it cannot be said that the evidence to support them was clear and satisfactory. The judgment therefore must be reversed.

*By the Court.*—Judgment reversed, and cause remanded with directions to affirm the order of the county court admitting the will to probate.

A motion for a rehearing was denied, with $10 costs, on October 6, 1914.