CHARLES GIDLEY, APPELLANT, V. WILLIAM GIDLEY ET AL., APPELLEES.

FILED FEBRUARY 14, 1936. No. 29454.

*John J. Ledwith* and *J. H. Barry*, for appellant.

*Schiefelbein & Donato, contra.*

Heard before GOOD, EBERLY and DAY, JJ., and RAPER and PROUDFIT, District Judges.

PROUDFIT, District Judge.

This action was brought in the district court for Saunders county, Nebraska, by the plaintiff against the defendants for the purpose of procuring a decree canceling certain deeds, more fully set out hereinafter, and quieting title in the plaintiff to certain real estate hereinafter more fully described. Plaintiff, appellant, alleges in substance that he is 64 years of age, a son of Sarah A. Gidley, now deceased; that the defendants Nellie Mead and William Gidley are also children of Sarah A. Gidley, and respectively the sister and brother of the plaintiff; that one Nathaniel Gidley, now deceased, was also a son of Sarah A. Gidley, and a brother of Charles Gidley, the plaintiff herein, and that at his death he left surviving him as his only heir at law and the only person interested in his estate his son, Merrell Gidley, defendant herein; that the defendant Matilda Gidley is the wife of Merrell Gidley, and by reason thereof claims some interest in the real estate hereinafter described; that the defendant Edward A. Mead is the husband of Nellie Mead, and by reason thereof claims some interest in said real

estate; that the defendant ———— Houfek, real name unknown, is the wife of Gus Houfek, and by reason thereof claims some interest in said real estate.

That on and prior to the first day of July, 1931, the plaintiff was the owner in fee of the following described real estate to wit: The west half of the northwest quarter, and the north half of the southwest quarter of section 22, township 16 north, range 6 east of the sixth principal meridian, in Saunders county, Nebraska, having become the owner thereof by conveyance from his said mother, Sarah A. Gidley, the deed bearing date January 6, 1928.

That on or about July 17, 1931, Nellie Mead and William Gidley, defendants herein, and Nathaniel Gidley induced the plaintiff to convey to the said William Gidley and Nathaniel Gidley the fee simple to his said real estate, reserving to himself a life estate in said real estate, and providing that the defendant Nellie Mead was to be paid $5,000 each by William Gidley and Nathaniel Gidley, said sums to be a charge upon the lands so conveyed to the said William and Nathaniel Gidley; that plaintiff's signature to said deeds was obtained by the said defendants and Nathaniel Gidley falsely and fraudulently representing to him that such procedure on his part was necessary to carry out his mother's intentions and desires in regard to said real estate, and that he relied upon said representations, and under the duress imposed upon him signed said deeds; that said deeds were executed without any consideration whatever passing to this plaintiff or from the defendants, and the said Nathaniel Gidley; that said plaintiff is deaf and was deaf at the time of the execution of said deeds, illiterate, could not read or write, had very limited business experience, and did not understand the nature of the deeds so executed; that all of the statements and representations of the said defendants and the said Nathaniel Gidley were false and untrue, and were known by them to be false and untrue, and were made with the intent to cheat and defraud plaintiff in pursuance of a fraudulent conspiracy entered into prior to the said 17th day of July, 1931.

That on or about the 15th day of April, 1932, the defendant William Gidley and Nathaniel Gidley, and defendants Nellie Mead and Edward A. Mead conveyed said premises to the defendant Gus Houfek, which deed has been recorded in the deed records of Saunders county, and in pursuance of said deed the said Gus Houfek has taken possession of said premises and has attempted to oust plaintiff therefrom and is now claiming to be the owner of said real estate, claiming the rights of exclusive possession and control of same; that plaintiff has no adequate remedy at law, and prays for cancelation of the said deeds, the removal of the clouds against the real estate because of said deeds, the quieting and confirming of the title in himself, and enjoining the defendants and all persons claiming under them from asserting any rights therein, and equitable relief generally, and costs of suit.

The answer of defendants Nellie Mead, William Gidley and Merrell Gidley admits the allegations of paragraphs 1, 2 and 3 of the petition, and denies every other allegation therein, and prays that the petition be dismissed at the cost of plaintiff.

The defendant Gus Houfek answers and alleges:

(1) Denies the allegations of paragraph 8 of the petition, denies that said defendant claims to be the owner of said premises and that he has ever attempted to oust plaintiff therefrom and exclude him from the same.

(2) Having no personal knowledge of other matters contained in the petition, he neither affirms nor denies same.

(3) Alleges that said real estate was conveyed to this defendant solely for the purpose of the trust expressed therein, and that this defendant neither has nor claims any interest therein except such as is necessary to carry out said trust, and said defendant prays that the petition as to him be dismissed at plaintiff's cost, and that he go hence without day.

It appears from an examination of the record in this case that the plaintiff is the son of Jesse Gidley and Sarah A.

Gidley, both now deceased. Jesse Gidley by his will devised his estate to his wife, Sarah A. Gidley, and to his children in the shares and proportions set forth in said will. It is not necessary to refer further to this will except to call attention to the first clause of the last paragraph, which is as follows:

"My son, Charles Gidley, is given nothing under and by the terms of this will, for the reason that his mother, Sarah A. Gidley, has made and will make ample provision for him in her last will."

And to the eighth paragraph, which is as follows:

"To my beloved wife, Sarah A. Gidley, I give, devise and bequeath the north half of the southwest quarter, and the west half of the northwest quarter of section twenty-two (22), in township sixteen (16) north, range six (6) east, in Saunders county, Nebraska, to her and her heirs forever."

The will of Jesse Gidley was executed September 3, 1918. On the same day Sarah A. Gidley executed her will, by the terms of which she made, with other devises and bequests, this disposition of the above described real estate:

"Third. I give, devise and bequeath to my son, Charles Gidley, the north half of the southwest quarter and the west half of the northwest quarter of section twenty-two (22), in township sixteen (16), range six (6) east, in Saunders county, Nebraska, and to him and his heirs forever." (Being the last devise to the said Sarah A. Gidley by Jesse Gidley.) Parenthetical matter inserted by the writer.

The will of Jesse Gidley was admitted to probate in Saunders county on May 10, 1920. On the 12th day of July, 1921, Sarah A. Gidley executed a codicil to her will which contained the following paragraphs:

"First. I give, devise and bequeath to my son, Charles Gidley, the use and income of the north half of the southwest quarter and the west half of the northwest quarter of section twenty-two (22), township sixteen (16), range six (6), Saunders county, Nebraska, during his natural life-

time, only, he to pay the taxes, insurance premiums and keep improvements thereon in suitable repair, instead of the provisions made for him in paragraph three of said will and testament and which paragraph I hereby cancel and annul.

"Second. Subject to the provisions of this codicil made for my son, Charles Gidley, I give, devise and bequeath the west half of the northwest quarter of said section twenty-two (22) to my son, William Gidley, on condition that, within one year from the time he receives possession of said real estate, he shall pay to my daughter, Nellie Mead, the sum of five thousand ($5,000) dollars, and subject to the same provision in favor of my son, Charles Gidley, I give, devise and bequeath the north half of the southwest quarter of said section twenty-two (22) to my son, Nathaniel Gidley, on condition that he shall pay to my daughter, Nellie Mead, within one year after he comes into possession of said real estate the sum of five thousand ($5,000) dollars. Provided that if the said Nellie Mead shall not be living at the time of the death of the said Charles Gidley, and shall not leave her surviving issue of her own body, then said bequests to her shall fail and shall be considered canceled, annulled and void."

Another codicil was executed December 19, 1929, but, as it has no bearing on the issues herein, no further reference will be made to it.

On the 6th day of January, 1928, Sarah A. Gidley, for the expressed consideration of one dollar and love and affection, executed a warranty deed purporting to convey to Charles Gidley the foregoing described real estate in fee simple. On the 30th day of June, 1931, Sarah A. Gidley died, and her will and codicils were admitted to probate on the 18th day of September, 1931.

On the 17th day of July, 1931, Charles Gidley signed two deeds, one of which purported, for the expressed consideration of one dollar and love and affection, to convey to William Gidley the west half of the northwest quarter of section 22, township 16, range 6, Saunders county, Nebraska,

in fee simple, "On condition that he pay to my sister, Nellie Mead, * * * $5,000 within one year after my death, or within one year from the time he (the grantee) receives possession of said real estate, said $5,000 to remain a lien upon said real estate until fully paid, reserving, however, unto myself (the grantor) the use, income and profits from said real estate during, and for, my natural life." Parenthetical matter inserted by the writer.

One of said deeds for a like consideration purported to convey to Nathaniel Gidley in fee simple the north half of the southwest quarter of section 22, township 16, range 6, in Saunders county, Nebraska, on like terms and conditions. Copies of said deeds appear in the bill of exceptions at pages 107 and 108, respectively.

It does not appear that any consideration was actually paid for the execution of these deeds, and there is no contention on the part of the appellees that they parted with anything of value in order to obtain said deeds.

On the 15th day of April, 1932, William Gidley, Nathaniel Gidley, Nellie Mead and Edward A. Mead, for the expressed consideration of one dollar and the trusts therein expressly set forth, executed a trust deed to Gus Houfek, and thereby conveyed to him the real estate hereinbefore described, upon the trusts and conditions as follows in substance: Charles Gidley to have the use of the buildings and 18 acres immediately adjacent thereto, to be used by him without rent, charge or any other payment therefor whatsoever during his life, or until the real estate be sold, subject to the power of sale contained in said deed of trust, the remainder of the 160-acre tract to be rented out by the trustee, who would collect rents, and out of the proceeds pay the necessary expenses in connection with the farm, such as taxes, upkeep, interest, or any indebtedness secured by said real estate, in accordance with said trust deed, and any other necessary expenses, and after said expenses were paid, the remainder of said rent to be paid to the said Charles Gidley. Said instrument purports to authorize the trustee to raise funds for the use of the said Charles Gidley

by the sale or mortgage of the real estate in the event that the rents therefrom shall not be sufficient to meet his requirements, the trustee to exercise his judgment as to whether he will sell or mortgage, said trustee to have authority to either mortgage or sell without obtaining the consent of any of the other parties to said deed, but, in the event a sale of the real estate is desired, the consent of the said Charles Gidley shall be obtained. There is a further provision that in the event of sale the proceeds of said sale shall be invested and the income used for the support of Charles Gidley, and, in the event the income therefrom is not sufficient, then the principal of said trust fund may be drawn upon for such purpose. It is further provided therein that the trustee shall pay out of said trust fund the reasonable and necessary funeral expenses and expenses of the last sickness of the said Charles Gidley, and that, subject to such payment, said real estate, or the money into which it may have been converted, shall be divided equally among the grantors, Nellie Mead, Nathaniel Gidley and William Gidley, or their heirs, devisees or legatees, should any of said persons die prior to the death of the said Charles Gidley. It is also provided in said instrument that the trustee shall be compensated for his services in connection with said trust.

The trial court dismissed plaintiff's petition, and he brings his appeal to this court.

Errors relied upon for reversal are: (1) That the court's finding is not supported by sufficient evidence; (2) that the court's finding was contrary to the evidence; (3) that the finding of the court is contrary to law; (4) errors of law occurring at the trial and duly excepted to.

Due appreciation of the picture presented by this record requires a careful consideration of the background. Jesse Gidley, father of plaintiff, appellant, was possessed of a considerable estate, and provided for its distribution by a will which was duly admitted to probate in Saunders county. By the terms of said will ample provision was made for the defendants William Gidley and Nellie Mead, and

also for Nathaniel Gidley, who would have been a defendant in this action except for the fact that he died before the action was commenced, and his successor in interest, Merrell Gidley, is joined in the case as a defendant. No provision was made for Charles Gidley in the will, Jesse Gidley, the father, stating that he made no provision for Charles for the reason that Charles' mother, Sarah A. Gidley, had made and would make ample provision for him. On the same day that Jesse Gidley executed his will on September 3, 1918, Sarah A. Gidley also executed her will, in which she devised in fee simple to Charles the real estate described in the pleadings herein. In July, 1921, Sarah A. Gidley executed a codicil to her will whereby she changed the devise to Charles Gidley from a devise in fee simple to a life estate in said real estate, remainder in fee in one eighty-acre tract over to William Gidley, the remainder in fee in the other eighty-acre tract over to Nathaniel Gidley, conditioned upon William and Nathaniel each paying to Nellie Mead $5,000.

The record further discloses that in this state of affairs Nellie Mead recommends to her mother that she make a deed outright to Charles so that there would be no doubt about his getting his portion of the estate. At that time, January 6, 1928, the deed conveying the land to Charles in fee simple was executed by his mother. It appears that this deed was taken by the scrivener, Gus Houfek, and he was told at the time that it was to be filed upon the death of Sarah A. Gidley.

In addition to these facts it should be borne in mind that the appellant, Charles Gidley, did not meet the defendants upon a common level and on equal terms, as he was illiterate, and further handicapped by a very marked degree of deafness and having had very little experience save that in which he was assisted by others.

The defendant most active in the transactions complained of appears to have been a very keen business woman, and from developments it would seem that she had an eye on the main chance. The uncontradicted testimony discloses

the fact that Nellie Mead, defendant, and one of the appellees, was the active party in the negotiations and in procuring the execution of the deeds to William and Nathaniel, and that she was to be a substantial beneficiary of such transactions. It is true she testifies that she considered that it was necessary for Charles' protection to have his fee simple title converted into a life estate with remainder over to her brothers, but it must be borne in mind that by the provisions of her father's will she was to receive in real estate and money the equivalent of $10,000, and that Charles was to receive nothing except such provision as might be made for him by his mother; that his mother in her will devised the quarter section of land involved herein to him in fee simple, and thereafter made a codicil to her will whereby his fee simple was converted into a life estate only, the remainder to pass to the brothers, William and Nathaniel, and they were each to pay Nellie $5,000. By the terms of the codicil these payments were not made a charge on the land, but the provision was that, in the event of Nellie's death without bodily issue before the death of Charles, said payments were to be canceled and annulled.

Nellie testified that, after the codicil above mentioned was executed in 1921, she thought that for Charles' protection he should have the fee simple title to the said real estate and so advised her mother, and eventually, in January, 1928, the mother executed such deed and it was left in the hands of the scrivener with instructions to file same upon the death of the mother. Within a very few days after her mother's death Nellie forms the conclusion that for Charles' protection his fee simple title should be converted into a life estate with remainder over to the two brothers, William and Nathaniel, each to pay her $5,000, and said payments to be made a charge upon the real estate affected, which provision materially improved her situation over that created by the codicil which had been revoked by the deed of January, 1928.

It is contended by the appellant that he was misled and deceived by his sister as to his mother's real purpose and

intention concerning himself, and that she unduly influenced him to execute the deeds to his brothers. The record shows without contradiction that the appellant was to a large degree dependent upon his brothers and sister for advice in the conduct of his business affairs, that he relied upon them, considered them trustworthy, that he respected the wishes of his mother that he should make such disposition of the property as he did, under the influence and urging of Nellie. The sincerity of the desire of the sister and brothers to protect their unfortunate brother Charles might well be questioned when they disregarded the provision of law authorizing the appointment of a guardian who would be required to give bond and be under the supervision and direction of the court, and took his matters into their own hands and formulated a proceeding whereby the three would be the ultimate beneficiaries to the exclusion of the other lawful heirs of the said Charles. The practical result of the actions of the sister and her two brothers was to place Charles under the control and supervision of one who assumed the power of a guardian over his property, but one who had not given bond for the faithful performance of his duty, nor was he under the supervision of a probate court. While arrogating to themselves the powers of a probate court in placing Charles' property under the control of a third party, they did not see fit to accord the one whose welfare they asserted they were so solicitously seeking the protection of a bond or the supervision of a court, and, further, the ultimate effect of their actions was to divert Charles' estate from his rightful heirs to their own gain and profit.

A careful reading of this record has forced the writer of this opinion to the conclusion that the strong mind and determined spirit of Nellie Mead so dominated and controlled the weaker mind of her brother Charles that the deeds executed by him reflected her wishes and purposes rather than his own. It is urged by the defendants in this case that these matters were all talked over in the presence of Charles and he was given to understand fully what was

taking place and why. But it must be remembered that he was very deaf. It has been held as a general principle that the burden of proof rests on one who attacks a conveyance on the ground of its execution under undue influence to establish that fact. However, it has been held by our court in *Bennett v. Bennett,* 65 Neb. 432, 91 N. W. 409, that the circumstances under which a conveyance was made, the condition of the grantor at the time, and the injustice to him and his heirs, if it is upheld, may be such as to cast upon the grantee the burden of showing that it is untainted with undue influence, imposition or fraud, but is the intelligent and deliberate act of the grantor. The principle underlying the cancelation of instruments procured by undue influence is set forth in 31 C. J. 1183, as follows:

"All that can be said, in the way of formulating a general rule on this subject, is, that whatever destroys free agency, and constrains the person whose act is brought in judgment, to do what is against his will and what he would not have done if left to himself, is 'undue influence,' no matter by what means the control is exercised, whether the control is exercised by physical force, duress, fraud, threats, importunity, or any other species of mental, moral or physical coercion. The means employed, the extent or degree of the influence, or by whom the influence is exerted, is immaterial, for the test always is, was the influence, whether slight or powerful, sufficient to destroy free agency, so that the act put in judgment was the result of the domination of the mind of another rather than the expression of the will and mind of the actor."

Citing *Carroll v. Hause,* 48 N. J. Eq. 269, 27 Am. St. Rep. 469. In the cited case the court says:

"Undue influence exercised by any one, whether he or another gains by its exercise, renders the will or other instrument thus procured worthless."

In *Skrinsrud v. Schwenn,* 158 Wis. 142, 147 N. W. 370, it is said:

"A case of undue influence is made out where it is shown

(1) that the testator was subject to such influence; (2) that the opportunity to exercise it existed; (3) that there was a disposition to exercise it; and (4) that the result appears to be the effect of such influence. As the law now is, these facts must be shown by clear and satisfactory evidence."

The case at bar appears to meet all these conditions.

One of the leading cases in Nebraska on the subject of undue influence is *Munson v. Carter,* 19 Neb. 293, 27 N. W. 208, where it is stated:

"Where coercion is not sufficient to amount to duress, but a social or domestic force is exerted on a party which controls the free action of his will, and prevents voluntary action in the making of a contract or execution of a deed for real estate, equity may relieve against the same on the ground of undue influence."

Cited with approval in *Blumer v. Albright,* 64 Neb. 249, 89 N. W. 809, and in *Macke v. Jungels,* 102 Neb. 123, 166 N. W. 191.

Referring to the proposition of defendants that the plaintiff was informed as to the entire transaction of which he now complains, that he understood what same was about, in *Brummond v. Krause,* 8 N. Dak. 573, 80 N. W. 686, it is said:

"It is not enough for one who has made a written contract with illiterate and infirm persons to show that the contract was read to them. It must also appear that they understood it and assented to it knowingly. * * * An actual understanding of the meaning of the instrument must appear before there can be a binding assent. As well might a claim of knowledge of the contents of a written instrument be based upon proof that it was exhibited to one who was blind, or read to one who was deaf, as to rely upon an interpretation thereof to persons who, from mental infirmity and dense ignorance, are not able to understand its meaning."

The undue influence which will avoid a deed is an unlawful or fraudulent influence which controls the will of the grantor.

It is worthy of note that the defendants William Gidley

and Merrell Gidley did not testify; that the witness, Charles Whitten, who it does not appear has any direct interest in the result, testifies to a conversation between Charles Gidley and defendant Merrell Gidley, in which Merrell said he would give the land back to Charles. At the time, however, Merrell did not have title, as his title was by inheritance from his father, Nathaniel, and Nathaniel had joined in the trust deed to Houfek, so that it was not in Merrell's power to convey to Charles. Also it is in the record that the defendant William Gidley had told Carl Gidley that he, William, would talk with Nathaniel and Nellie and see that Charles got his land back; but at that time William had also deeded to Houfek and therefore could not convey to Charles. While Houfek's testimony relates entirely to his actions as scrivener on the occasion when Sarah A. Gidley executed her deed, and in taking the acknowledgment of Charles to the two deeds which are the basis of this action, he did not testify as to his interest under the trust deed, but in his answer alleges that his only interest in the premises is to fulfil the trust.

If the deeds to the Gidley brothers cannot be upheld, it follows as a matter of course that the trust deed to Houfek must fall with the other deeds. Nellie Mead testified that they took nothing from Charles, that by these deeds he still had a life use of the premises, but by the trust deed given to Houfek they had severely limited his life use at least, and by the deed to the Gidley brothers they had certainly deprived the grantor of the power of sale or other disposition of the real estate involved, so that he had surrendered his control of this property to his brothers and sister and received no consideration whatever therefor, and that he was induced to take this action by reason of the undue influence exercised over him by Nellie Mead, William and Nathaniel Gidley. The deeds cannot be upheld in equity, but should be canceled, as well as the deed from the Gidley brothers and Nellie Mead to Gus Houfek, and the title to said real estate quieted and confirmed in the plaintiff, appellant, Charles Gidley.

The judgment of the lower court should be and is hereby reversed and remanded, with directions to enter a judgment in conformity with this opinion, at the cost of appellees.

REVERSED.