ANNA LADMAN ET AL., APPELLANTS, v. FARMERS & MER-CHANTS BANK OF MILLIGAN ET AL., APPELLEES.

FILED FEBRUARY 21, 1936. No. 29550.

*E. J. Steinacher* and *Guy A. Hamilton,* for appellants.

*Sloans, Keenan & Corbitt, F. C. Radke, William J. Gartland* and *Waring & Waring, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY, PAINE and CARTER, JJ.

GOOD, J.

Plaintiffs, two of the children of Barbara Ladman, deceased, commenced this action to recover funds which they allege had been deposited in escrow, and that the escrow agreement had failed and could not be carried out. Emil Ladman, defendant, another child of Barbara Ladman, filed an answer and cross-petition, claiming the same relief. Later they changed their position and asked for alternative relief; that the escrow agreement be terminated and recovery had of the alleged deposit of money in escrow, or that the escrow agreement be carried out according to its terms. The other defendants, in effect, denied that there was any escrow agreement or funds deposited in escrow. The trial court found against the plaintiffs and Emil Ladman and for the other defendants. Plaintiffs have appealed.

A somewhat extended statement of the facts is necessary to an understanding of the situation. Jan and Barbara Ladman were husband and wife and had five children, namely: Joseph, James, Emil, Anna and Mary. In 1895 Jan and Barbara separated but were not divorced. Jan took up his residence in Montana, and Barbara remained in Nebraska, making her home in Milligan, Fillmore county, where she owned a residence property. At the time of their separation Barbara owned 160 acres and Jan owned 80 acres of land. The 80 acres owned by Jan was conveyed to the son Joseph, Jan retaining a life interest, for which

Joseph was to pay him $100 a year as long as he lived. It appears that the son James also removed to Montana. Joseph remained upon the land conveyed to him by the father.

In November, 1932, Barbara became very ill and sent for Charles Smrha, president of the Farmers & Merchants Bank of Milligan (hereinafter referred to as the bank), and had him draw a will for her, which was duly executed. At that time $12,775, which Mrs. Ladman had on her person, was turned over to Mr. Smrha for deposit in the bank. Mr. Smrha took this money to the bank, deposited it and issued to Mrs. Ladman a certificate of deposit for the amount. A few days later, and on the 1st of December, Mr. Smrha was recalled to the residence of Mrs. Ladman. She had ascertained that if she left a will it would have to be probated and go through the court. She desired to avoid that act and undertook to make another disposition of her property and had the will destroyed. On that day the following instrument was prepared by Mr. Smrha and signed by Mrs. Ladman and all of her children:

"By this agreement be it agreed as follows:

"That Barbara Ladman deposits in cash—disposition of which is to be made as follows:

"These funds were accumulated by Barbara Ladman. She distributes them among her children in such a manner that each shall receive the same share, when there is added the farm and the dwelling in town, as well as other property which she owns, and there is subtracted what heretofore has been paid to each child. The funds will be deposited in such a manner that they shall draw interest and this interest shall go to Barbara Ladman until her death and she may take from the capital what may be needed for her maintenance and personal expense. The funds will be so deposited that they will be safe and that for each child there shall be set up that sum to which such child is entitled. Each child shall be entitled only to those funds which are set up in his name and to no others. All bonds, receipts, certificates, notes and other papers which represent the de-

posited funds shall be deposited in the Farmers & Merchants Bank at Milligan, Nebraska, where Barbara Ladman shall have access to them. The funds will be deposited to bear interest by agreement of all the children, Barbara Ladman, John Simacek, and Charles Smrha. Not until after the death of Barbara Ladman shall the money come into the hands of the children and that in the manner above set out.

"The agreement is that Barbara Ladman shall have the right to use said funds at will without whatsoever hindrance for any manner of personal need or for her care. Should the interest not be sufficient for her personal expense and needs, then she has the right to use of the capital so much as might be needed.

"Written at Milligan, Nebraska, December 1, 1932.

"In presence of: C. Smrha."

At this time Mrs. Ladman surrendered the certificate of deposit to, and the fund representing it was left in, the bank. Two days later the children, alone, executed an instrument, whereby they undertook to apportion among themselves their respective shares in the proceeds of the certificate of deposit. On the 26th of December, 1932, Mrs. Ladman departed this life. Shortly thereafter all of the children undertook to make a disposition of the real estate left by Mrs. Ladman. They agreed among themselves that there should be taken from the cash on hand in the Barbara Ladman account $500 from each of the shares of James, Emil, Anna and Mary, and that this amount should be paid to their father, in consideration of which he was to execute a deed, relinquishing his interest in the real estate owned by Barbara Ladman at the time of her death, and releasing his life interest in the 80 acres conveyed to the son Joseph. It was further provided that Joseph should execute a deed, releasing any interest in the 160 acres left by Barbara and that all of the children should execute a deed conveying the town property to a son of Joseph. It was agreed that all of the deeds should be deposited in the bank, and the $2,000 delivered to Jan Ladman, when all of the deeds, in-

cluding the one from him, had been received. Jan Ladman was not a party to this agreement.

The children executed all of the deeds required by their agreement and deposited them in the bank. James took the deed, which was to be executed by his father, to him in Montana. He refused to execute the deed, unless his son Joseph should pay him the full amount due of $100 per year for a period of something more than 30 years, less $200 which Joseph had previously paid, and unless each of the children should annually pay him $20 during his life. Emil and Anna, on learning of the attitude of their father, telegraphed and wrote to Mr. Smrha not to deliver their share of the $2,000 to the father. It appears that the father later signed the deed, but it was never delivered, and he has since departed this life. The escrow agreement has not been carried into execution, and cannot be, for the reason that Jan Ladman departed this life without ever having delivered the deed required by the escrow agreement. The fund, which the plaintiffs and Emil seek to recover, is the $500 which each alleges he or she deposited in escrow.

The question arises: Was there any deposit in escrow of $500 each by Anna, Mary and Emil? In turn, this depends upon whether or not the instrument above set out transferred the funds of Barbara Ladman, then in the bank, to her children. If that instrument was sufficient to constitute a gift *inter vivos,* then the money belonged to Barbara's children and there was, in effect, a deposit of $500 each in escrow; and since the escrow agreement cannot be carried out, each would be entitled to recover that amount from the escrow-holder. On the other hand, if that instrument was insufficient to create a gift *inter vivos,* then the fund in the bank was the property of Barbara Ladman and on her death passed to her personal representative, in which event the plaintiffs and Emil have made no deposit in escrow and could not recover in this action.

"To make a valid and effective gift *inter vivos* there must be an intention to transfer title to the property, as well as a delivery by the donor and an acceptance by the donee. * * *

To have the effect of a valid gift, therefore, the transfer of possession and title must be absolute and go into immediate effect, so far as the donor can make it so by intent and delivery, and must be so complete that if he again resumes control over it without the consent of the donee he becomes liable as a trespasser." 12 R. C. L. 932, sec. 10.

"If delivery is made to an agent of the donor, the gift is not complete until there has been a delivery to the donee or to someone for him, and the donor may reassert title to the property at any time before delivery by his agent. On a delivery to a third person as the agent of the donor the gift is not complete, and the death of the donor before the delivery to the donee works a revocation of the gift." 12 R. C. L. 934, sec. 11.

In 28 C. J. 629, it is said: "In order to be effectual a gift must be fully executed, for the reason that, there being no consideration therefor, no action will lie to enforce it. If anything remains to be done, the transaction is a mere executory agreement to give, and the title does not pass." In the same volume, at page 634, we find this statement of the law: "In order to constitute an effectual delivery the donor must not only have parted with the possession of the property, but must also have relinquished to the donee all present and future dominion and control over it, beyond any power on his part to recall. The surrender must be so full and complete that, if the donor resumes control over the property without the consent of the donee, he will be answerable in damages as a trespasser. The retaining of control in the hands of the donor over the subject of the gift, or the reservation by the donor of any right to retake the property or appropriate it to other purposes, avoids the gift."

In the light of these authorities, let us now examine the written instrument. In the first place, the instrument does not state the amount of any deposit made. The instrument does not designate any particular amount that shall go to any particular child. It leaves for future determination by some one, not designated, the amount that shall be set up

and belong to each child. It says: "The funds will be so deposited that they will be safe and that for each child there shall be set up that sum to which such child is entitled;" but no one is designated to make the set-up. Evidently, it would be within the power of Mrs. Ladman to determine that set-up. It is further provided: "Not until after the death of Barbara Ladman shall the money come into the hands of the children and that in the manner above set out." Again, it provides that Barbara may take from the capital what may be needed for her maintenance and personal expenses. Again, it is provided: "Barbara Ladman shall have the right to use said funds at will without whatsoever hindrance for any manner of personal need or for her care. Should the interest not be sufficient for her personal expense and needs, then she has the right to use of the capital so much as might be needed." The money to which she refers is in the bank, but she authorizes no one to turn the money over to the children or any of them. Moreover, it is further provided that the amount that each may possibly be entitled to shall be determined by some one in taking into consideration the distribution of the realty which Barbara owns and the advances that may have been made to the children, or, possibly, their obligations for borrowed funds from the mother. The written instrument neither designates nor authorizes any person to make definite and certain those matters which in the writing are left indefinite and uncertain. Clearly, this power remained in Mrs. Ladman. She never exercised it.

We are convinced that the instrument is wholly insufficient, in itself, to prove a gift to the children, and there is no other evidence in the record of a gift other than that contained in this instrument.

Plaintiff contends that this court has, in the case of *In re Estate of Ladman,* 128 Neb. 483, 259 N. W. 50, adjudicated that Barbara Ladman made a valid distribution of the fund in the bank. This contention is not well founded. The only question presented in that case was whether or not Barbara Ladman died intestate or testate. In commenting upon the

destruction of the will, the writer of the opinion did state that Barbara Ladman had made another disposition of her estate. It would have been more accurate if the writer had said that Barbara Ladman had attempted to make another disposition of a part of her estate. But the question of whether the instrument now before us was a valid instrument and constituted a gift *inter vivos* was not in issue and was not decided.

We therefore reach the conclusion that the money in the bank did not then belong to the children who attempted to make the escrow agreement. It belonged to the personal representative of Barbara Ladman. It follows that neither the plaintiffs nor Emil Ladman deposited any money in escrow, and they are not entitled to recovery of a money judgment in this action.

The judgment of the district court, in so far as it denied recovery of any of the funds, alleged to have been deposited by plaintiffs and defendant Emil Ladman in escrow, is right. Plaintiffs and Emil Ladman prayed for other equitable relief. Since it is apparent that the escrow agreement is impossible of execution, the several parties, who executed deeds and deposited them in escrow, are entitled to a return of such deeds. The cause is remanded to the district court, with directions ordering a return of the deeds, placed in escrow, to the persons executing the same. In all other respects, the judgment of the district court is affirmed.

AFFIRMED AS MODIFIED.