FRANK R. SAMPSON ET AL., APPELLANTS, V. WILMA J. SISSEL ET AL., APPELLEES.

38 N. W. 2d 341

Filed June 29, 1949.   No. 32633.

*Beynon, Greenamyre & Hecht,* and *Denney & Denney,* for appellants.

*George A. Skultety,* and *Van Pelt, Marti & O'Gara,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

YEAGER, J.

This action as it finally came to trial was by E. A. Stark, administrator with the will annexed of the estate of Frank J. Sampson, deceased, Frank R. Sampson, and Frances Sampson, plaintiffs, appellants here, against Wilma J. Sissel, Galen Sissel, Reba Meyer, Louis Meyer, and Olive W. True, defendants, appellees here. The action was for a decree setting aside a deed and a bill of sale from Frank J. Sampson, deceased, to Wilma J. Sissel. The action was tried on a second amended petition, answer of defendants, and a reply by plaintiffs.

When the case came on for trial the defendants Reba Meyer, Louis Meyer, and Olive W. True disclaimed any interest in the action or the res thereof and moved for a dismissal as to them. The motion was sustained and the action as to them dismissed. At the conclusion of the evidence adduced by plaintiffs on motion of the remaining defendants a decree was entered dismissing the petition as to said defendants for the reason that the evidence was insufficient to sustain a cause of action. A motion for new trial was filed and overruled. From the order overruling the motion for new trial, the decree, and the order dismissing the action as to Reba Meyer, Louis Meyer, and Olive W. True the plaintiffs have appealed.

By the petition it was declared that Frank J. Sampson died on December 25, 1946, at the age of 79 years, owning

80 acres of land adjoining the city of Fairbury, Nebraska; that after his death a deed and a bill of sale, both dated September 2, 1942, were filed of record in Jefferson County, purporting to have been signed by the said Frank J. Sampson and purporting to convey the 80 acres of land and certain personal property to the defendant Wilma J. Sissel; that the deed and bill of sale were procured by fraud and undue influence of Reba Meyer, Louis Meyer, Olive W. True, and Wilma J. Sissel; that Wilma J. Sissel is the daughter of Reba Meyer and Louis Meyer and Galen Sissel is her husband; that there was no delivery of the deed; and that there was no consideration therefor.

The answer in substance alleged the execution and delivery of the deed and bill of sale and that the consideration was an oral agreement by Wilma J. Sissel that one Howard James was to have the use of the house and other buildings on the land during his life and that he was to be given 6 cows and 100 chickens or that he was to be allowed to keep such cows and chickens on the land as he had not exceeding the number mentioned. In addition to these allegations the answer contained a general denial. The allegations of the answer were by reply denied.

The assignments of error are numerous. The one of controlling importance raises the question of whether or not the court erred in decreeing a dismissal at the conclusion of the evidence of plaintiffs.

Since the decree was rendered in favor of defendants at the close of plaintiffs' evidence every fact in evidence and every inference reasonably deducible from the facts in evidence must be resolved in favor of plaintiffs. 30 C. J. S., Equity, § 506, p. 902.

It becomes necessary therefore to examine the facts and the reasonable inferences to be drawn therefrom to ascertain whether or not it can be said that the elements necessary to sustain a cause of action have been established.

There is no evidence whatever in the record pertaining to the execution of the two instruments except that which appears on their face. On their face they are regular in form and no effort was made to prove irregularity or that they were not executed by the deceased, Frank J. Sampson, and properly witnessed at the time indicated by the instruments. Also there is no evidence with regard to delivery.

The pertinent circumstances testified to were that Frank J. Sampson, in advanced years, lived alone or with Howard James on his farm and a short distance away lived Reba and Louis Meyer; that the Meyers were frequently at his place and in his company and performed for him neighborly service; that at the time the instruments purport to have been executed Wilma J. Sissel was away from the Meyer home and had no direct contact with Frank J. Sampson; that Frank J. Sampson had some kind of a business transaction or transactions with Reba Meyer and Louis Meyer which after the date of the deed and bill of sale culminated in a lawsuit which was not tried but was settled; that at all times up to the date of his death Frank J. Sampson to the extent that he was able operated the farm and his interests thereon as his own; that Wilma J. Sissel neither exercised nor attempted to exercise any control over the farm or the personal property mentioned in the bill of sale until after the death of Frank J. Sampson; that Frank J. Sampson was on terms of cordiality with Frank R. Sampson, a nephew, and Frances Sampson, a sister-in-law, and that he looked to and obtained from them needed care and kind attention in the last days of his life; and that on January 3, 1945, Frank J. Sampson made a will by the terms of which he gave his entire estate to Reuben Sampson, Howard James, and Frank R. Sampson. The face of the will indicates that it was made January 3, 1934, but this is clearly erroneous.

On the question of susceptibility to influence the following appears in the testimony of Frances Sampson:

"Q What can you say, Mrs. Sampson, as to whether or not he was a man that would be influenced by others? * * * A I hardly know how to say it. He would pretend, but when it came to a showdown he used his own judgment, of course. * * * Q Was he mentally alert? A Yes, he always knew. Q He always knew? A While he was there with me. Q Up to the very day of his death you feel he was mentally competent, do you? A Yes, I do. Q And, as you say, he may have tried to please people from time to time, but when it came to a showdown he knew what he wanted and stuck to it? A He did things the way he thought." Nora S. Wade said: "Q Now as you observed Mr. Sampson, your cousin, did you have occasion to observe any occasions in which he appeared to be influenced by other people in his actions? A He was always influenced by his mother; as long as his mother lived he did just about as his mother ordered him to do. Q And would you say he was a man that was subject to influence by other people? * * * A Yes sir. * * * Q And he was always mentally alert, wasn't he? Do you understand my question? A No sir. Q He always knew what he was doing, didn't he? A Well, I suppose he did." Frank R. Sampson said: "Q Now what was, during this period of time that you observed him, what did you observe as to his disposition, especially with reference to being subject to influence by the suggestions of others? A Well, I would say he was feeble and that he could be influenced."

On the question of consideration the only evidence offered by plaintiffs was the following from a deposition given by Wilma J. Sissel which was received as an admission or admissions against interest: "Q. Mrs. Sissel, did you pay any money to Frank J. Sampson for the deed and bill of sale to his land and property? A. No. * * * Q. Did you render any services or perform any work for Frank J. Sampson in exchange for this deed and bill of sale? A. What do you mean by 'services,' neighborly things or— * * * Q. Well, work or labor. A

Labor, no. * * * Q Now, did you ever at any time enter into any written agreement whereby you agreed to do anything for Howard James? A. No. * * * Q. Did you ever have any conversations or correspondence with Frank J. Sampson wherein you agreed to do anything for Howard James? A. No. * * * Q. What is your birth date? A. December 29, 1921. * * * Q. You are the daughter of Reba and Louis Meyer, is that correct? A. Yes, sir."

This summary fairly reflects, we think, all of the evidence bearing directly or inferentially upon the question of whether or not the deed and bill of sale were procured by fraud and undue influence, the question of whether or not there was delivery, and the question of whether or not they were without consideration.

The statutes of Nebraska require that consideration shall be set forth in a deed of conveyance of real estate. § 76-214, R. S. 1943. There is no corresponding requirement either of statute or decision which, when title is attacked by action to set aside the deed, exacts that the grantee shall assume the burden of proving consideration. The case of Miller v. Crosson, 131 Neb. 88, 267 N. W. 145, might indicate otherwise but when the opinion is examined in its relation to the section referred to in the opinion, which is now section 36-408, R. S. 1943, it becomes clear that the statement has no reference to deeds but only to contracts and agreements.

The general rule, when an attack is made on the ground of lack of consideration and the question of consideration becomes a matter of importance, is that the statement of the consideration in a deed is prima facie evidence but that it may be rebutted. Patrick v. Leach, 2 F. 120, 1 McCrary 250.

A further rule is that a delivered deed passes title even if there is no consideration. Conway v. Rock, 139 Iowa 162, 117 N. W. 273; Stauffer v. Milner, 207 Iowa 776, 223 N. W. 686; Bowen v. Willard, 203 Minn. 289, 281 N. W. 256. Of course this rule does not protect a title so

obtained by fraud or undue influence of the grantee nor does it protect against such a transfer by the grantor in fraud of creditors. In 26 C. J. S., Deeds, § 16, p. 189, it is said: "By far the more universal rule, however is that, as between the parties, their heirs or privies, a deed is good without consideration, in the absence of some wrongful act on the part of the grantee, such as fraud, or undue influence, this conclusion being based by some authorities on the ground that it evidences an executed gift or contract, and by others on the ground that the statutes governing conveyances give the deed the effect of a common-law feoffment."

This jurisdiction recognizes the right of an owner of property to convey his estate without consideration, or in other words to make a gift of it inter vivos. Newell v. Pierce, 131 Neb. 844, 270 N. W. 469; Smith v. Black, 143 Neb. 244, 9 N. W. 2d 193; Kellner v. Whaley, 148 Neb. 259, 27 N. W. 2d 183. While the opinion in Smith v. Black, *supra*, speaks of consideration in connection with the disposition of property the facts as disclosed by that opinion show that the disposition there made was a gift inter vivos and that the question of consideration was not involved. Kellner v. Whaley, *supra*, does not have in it any question of consideration but it illustrates the rule that the conveyance of an estate without consideration or as a gift may be valid.

Plaintiffs however urge that this is so only if possession is also delivered; that in the absence of the delivery of possession along with the instrument purporting to pass title such instrument is testamentary.

We have found no decision in this jurisdiction so holding as respects real estate. The case of Ladman v. Farmers & Merchants Bank, 130 Neb. 460, 265 N. W. 252, does so hold with regard to personal property. In the opinion in that case, by quotation from 12 R. C. L., Gifts, § 10, p. 932, it was said: "To make a valid and effective gift inter vivos there must be an intention to transfer title to the property, as well as a delivery by the

donor and an acceptance by the donee. * * * To have the effect of a valid gift, therefore, the transfer of possession and title must be absolute and go into immediate effect, so far as the donor can make it so by intent and delivery, and must be so complete that if he again resumes control over it without the consent of the donee he becomes liable as a trespasser."

Significantly, we think, in First Trust Co. v. Hammond, 140 Neb. 330, 299 N. W. 496, in defining the elements necessary to constitute a gift of personal property it was said: "To make a valid and effective gift inter vivos, there must be an intention to transfer title to the property, and a delivery by the donor and acceptance by the donee, and the transfer must be so complete that if the donor again resumes control over it without the consent of the donee he becomes liable as a trespasser." Ladman v. Farmers & Merchants Bank, *supra,* is cited. It will be observed that in this definition no mention is made of delivery of possession. Further in the opinion it is said: "This court, in connection with the placing of title to real estate by one spouse in the other, has laid down the rule that, where the parties are husband and wife, there is a presumption that the placing of title in the name of one spouse was intended by the other spouse as a gift. *·* * No reason is apparent why the same rule should not apply in case of transfer of personal property."

By this later statement, if not by the former, it is made clear that as between husband and wife the doctrine of Ladman v. Farmers & Merchants Bank, *supra,* with regard to the necessity of delivery of possession along with title to personal property was rejected. It is made clear that if title has been caused to pass by the donor and is beyond recall the gift is complete and valid. It will be observed that in the case of Ladman v. Farmers & Merchants Bank, *supra,* the court was dealing not with a completed gift but with an effort to enforce an executory transaction.

Whether this is a case which should be considered on

the theory of a pretended gift inter vivos or as one requiring a consideration to make the instruments effective for the purpose of conveying title is not easy of determination. We think however that since by answer the defendants joined issue on the matter of consideration the trial court considered it on that theory and that we should accordingly so do.

On this theory there has been a total failure of proof by the plaintiffs. There is nothing of probative value to rebut the presumption flowing from the prima facie evidence contained in the instruments that they were based on a valuable consideration. On this proposition the plaintiffs were satisfied to rest on evidence alone that Wilma J. Sissel gave no money to Frank J. Sampson and performed no labor for him. This evidence is no more than a negative in part of the recited consideration contained in the instruments.

The district court correctly held that there was a failure of proof that the instruments were without consideration.

There was no evidence whatever with regard to delivery except that the instruments were recorded the day after the death of Frank J. Sampson. Who it was that filed them for record is not shown but we infer as did the plaintiffs that they had been in the possession of Wilma J. Sissel or someone for her and were filed by her or on her behalf.

The situation therefore must be controlled by the rule that possession of a deed or other instrument of conveyance by a grantee raises a presumption that the instrument was properly delivered and the burden of proof is upon him who disputes it. Kellner v. Whaley, *supra.* Accordingly it must be said that the district court did not err in decreeing that there was a failure of proof with regard to the contention that there was no delivery of the instruments.

On the question of undue influence the elements necessary to be established in order to accomplish this end

are: That the grantor was subject to such influence; that the opportunity to exercise it existed; that there was a disposition to exercise it; and that the result appears to be the effect of such influence. Gidley v. Gidley, 130 Neb. 419, 265 N. W. 245; Smith v. Black, *supra;* In re Estate of Farr, 150 Neb. 615, 35 N. W. 2d 489. The parties are in accord on the proposition that this rule is applicable.

A search of the record, the essentials of which it is thought are fairly reflected in the summary of evidence set out herein, has been made to ascertain if there was evidence or reasonable inference from evidence prima facie to support and sustain the elements named. The search shows sufficiently only evidence of opportunity and that only by Reba Meyer and Louis Meyer but not by the grantee.

It is a matter of no grave importance that undue influence was exerted by others than the beneficiary, if undue influence was shown, in the light of the pronouncements of this court. In Gidley v. Gidley, *supra,* the following was quoted with approval from Carroll v. Hause, 48 N. J. Eq. 269, 22 A. 191, 27 Am. S. R. 469: "Undue influence exercised by any one, whether he or another gains by its exercise, renders the will or other instrument thus procured worthless." This was again approved in Woodring v. Siebold, 136 Neb. 647, 287 N. W. 75.

In the evidence appears the statements of witnesses that Frank J. Sampson was subject to influence. There is however no direct evidence or statement of circumstance or circumstances from which a reasonable inference could be drawn that he could be influenced to depart from his own will and follow the will of another or others.

In order to say that plaintiffs have sustained their burden as to this element there must be found in the record prima facie evidence that Frank J. Sampson was capable of having his free agency destroyed and that he was

capable of being constrained to depart from his own judgment and to depart from his own will and follow the will of another. Gidley v. Gidley, *supra;* 31 C. J., Influence, p. 1183. There is no such evidence in the record.

Is there evidence of a disposition to exercise undue influence? The answer must be in the negative.

There is no evidence directly bearing on this question and no evidence of circumstances from which any reasonable inference of disposition to unduly influence could flow. This element involves activity or overt act on the part of the person benefited or the one or ones responsible for bringing about the benefit. Clearly in the absence of direct evidence of overt act or of evidence of circumstances from which overt act could be reasonably inferred this element is incapable of being sustained. There is a total absence of such evidence in the record.

The remaining element, that is that the result appears to be the effect of undue influence, requires no consideration if there is nothing of an overt character to which it can attach. As already pointed out there is nothing in the evidence of such character.

Certain objections to the introduction of evidence on the trial were sustained. In the particular instances offers were made. The rulings in these respects have been assigned as error. We conclude that the rulings were not prejudicial to the defendants. The evidence thus offered related to conversations of Frank J. Sampson with third persons long after the date of the instruments in question with regard to his intended disposition of his estate. In the first place they were inadmissible as hearsay. Shold v. Van Treeck, 88 Neb. 80, 128 N. W. 1134; Colbert v. Miller, 149 Neb. 749, 32 N. W. 2d 500; Muff v. Brainard, 150 Neb. 650, 35 N. W. 2d 597.

In the second place they were not in proof or demonstration of procurement of the instruments by undue influence.

It becomes unnecessary to consider the question of

whether or not the court erred in dismissing the action against the defendants Reba Meyer, Louis Meyer, and Olive W. True, at the time it was dismissed, rather than to have waited until after the conclusion of the evidence for plaintiffs. It is clear that the evidence was the same as if they had been allowed to remain as party defendants. The evidence was clearly insufficient to sustain a cause of action against them.

In the light of the view taken of the matters discussed herein the remaining assignments of error do not require consideration.

The decree of the district court is affirmed.

AFFIRMED.